STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. JOHN D'ADAME, PLAINTIFF IN ERROR.

Submitted July 8, 1912—Decided March 3, 1913.

1. Where an answer or a part of an answer is irresponsive to a competent question, the examining party may move to strike out what is irresponsive, whether it be competent evidence or not, but if competent the adverse party has no such right.

2. If a question be incompetent the adverse party cannot "speculate" by waiting to see if the answer be favorable to him, and if not moving to strike it out. He must object to the incompetent question.

3. If a question be competent and the answer incompetent, the adverse party may move to strike out the answer, and he does not lose this right by not objecting to the competent question.

*55 Vroom.*                    State v. D'Adame.

4. Statements made in the presence of the accused and injuriously affecting his rights, are not evidential against him because so made, unless it may properly be inferred from his silence or from the substance or manner of his reply that he assented, wholly or partially, to the truth of such statements.

5. Where a party is "surprised" by adverse testimony of a witness called by him, the trial court may in the exercise of its sound discretion permit him to offer proof of self-contradictory statements previously made by such witness for the purpose, not of proving the truth of such statements, but to "discredit" or neutralize the effect of such adverse testimony. The trial court will upon request, and should without request, limit the effect of such proof to this purpose.

6. Proof of prior self-contradictory statements under these circumstances is not an impeachment of the party's own witness, but is only an attack upon the trustworthiness of a specific part of his testimony. In case of a "surprise" such an attack is permissible.

7. The application of the rule requiring "preliminary warning" as a foundation for proving self-contradictory statements is in New Jersey largely within the sound discretion of the trial court, depending upon whether there is, or is not, in each particular case opportunity for such application without working injustice.

8. In the absence of proof to the contrary, a man of full age is presumed to have "ordinary intelligence," and under an indictment for receiving stolen goods, knowing them to have been stolen, it is in such absence not error for the court to charge— "Guilty knowledge may be found by the jury where the defendant receives the goods under such circumstances as would satisfy a man of ordinary intelligence and caution that they were stolen."

9. Where it is claimed that, by reason of proof of a low degree of intelligence of an adult man accused of crime involving guilty knowledge, a lower standard of accountability than men of "ordinary intelligence" are charged with should be applied. specific instructions to the jury regarding this point should be requested of the trial judge, otherwise the presumption of ordinary intelligence will prevail.

On error to the Supreme Court, whose opinion is reported in 53 *Vroom* 315.

For the plaintiff in error, *Coult & Smith.*

For the defendant in error, *Wilbur A. Mott,* prosecutor of the pleas.

The opinion of the court was delivered by

WHITE, J. This is a writ of error to a judgment of the Supreme Court affirming a judgment of the Court of Quarter

Sessions of Essex county, convicting the defendant, D'Adame, of the crime of receiving stolen goods, knowing them to have been stolen. The goods in question consisted of copper wire which two boys, Knight and Mahon, had cut from the telegraph poles of the Lehigh Valley Railroad Company. Upon information received from a third boy, a warrant was sworn out for Knight and Mahon, and two days after the theft Officers Miller and Autobato arrested them. They admitted the theft at once, and, upon the trial of D'Adame, testified that they had sold the wire to him at his house on Miller street, Newark. While on the stand, Mahon pointed out and identified D'Adame as the man who bought the wire from them, but Knight, when asked to do so, pointed out another man and said he was one of the men that was there, but that he did not see the other in the court room. The man who was pointed out by Knight as one of the men was not D'Adame, and, in fact, took the stand and swore he had never been at the Miller street house. The officers who arrested the boys, Knight and Mahon, two days after the crime in question, were then called and both testified that they took Knight immediately after arresting him, and when he admitted stealing the wire, to D'Adame's house, and that in the presence of D'Adame, Knight had pointed out D'Adame and said he was the man who bought the wire, and that thereupon D'Adame had denied it and said, "It wasn't him." It is in reference to this testimony of the officers that the errors principally insisted upon are assigned.

The exceptions were allowed as follows: Officer Miller, having reached the point where he had taken the boy Knight to defendant's house, testified:

"*Q.* State what the boy said and what the defendant said.

"*A.* Autobato asked the boy in English, 'Is this the man you sold the wire to,' and he said 'Yes.'

"*Q.* Was this in the presence of defendant?

"*A.* Yes, sir.

"Mr. Coult (defendant's counsel)—I move to strike out the answer to this question on the ground that it is hearsay, and

secondly, on the ground that it is an impeachment of the state's witness.

"*Q.* What did D'Adame say, if anything, to that?

"*A.* D'Adame said, 'It wasn't him.' The boy said, 'Yes, I have been here before.'

"By the Court—The motion to strike out is denied. Exception prayed by defendant allowed and sealed."

Officer Autobato, having reached a similar point, namely, where they had brought the boy Knight into defendant's house and into his presence, testified:

"*Q.* What was said?

"*A.* I just said to the boy, 'Is that the man you sold the stuff to?'

"Mr. Coult—I object to the question, 'What was said?' Objection overruled and exception sealed.

"*A.* I brought the boy in the house that we arrested and I asked him—in the house there was two men sitting there and two women—I asked him if that was the house he had sold the stuff in. When he got inside, he said, 'Yes.' I said, 'Is the party in here that you sold the stuff to?' He said, 'Yes.' I said, 'Point him out to me.'

"*Q.* Who did he point out?

"*A.* The man by the name of D'Adame.

"*Q.* Where is he?

"*A.* This is D'Adame here (indicating defendant).

"*Q.* And then did you arrest him?

"*A.* Yes, sir. * * *

"Mr. Coult—At this point I wish to move to strike out that portion of this witness' testimony which relates to the identification of the defendant by the boy Knight. * * * The testimony is clearly hearsay.

"*Q.* By the Court—What you said the boy said about this man as being the person to whom the property was sold was said in the presence of the defendant?

"*A.* In the room there; yes, sir.

"*Q.* Was the defendant there?

"*A.* Yes, sir.

"*Q.* Did the defendant say anything?

"*A.* He said he didn't buy it.

"By the Court—The motion is to strike out?

"Mr. Coult—Yes, sir.

"The Court—Motion denied. Exception prayed for defendant allowed and sealed."

The Supreme Court (*State* v. *D'Adame,* 53 *Vroom* 315), quoting the testimony of Officer Miller, where no objection was made to the question but only a motion made to strike out the answer, treated the matter from the standpoint of an attempt on the part of the defendant at "speculation," by permitting the question without objection, and then, finding the result unfavorable, moving to strike out the answer. Exception is taken to this view, however, because it is said that the question itself was a proper one, and so not subject to proper objection.

The rules with regard to a motion to strike out testimony may be summarized as follows: Where an answer, or a part of an answer, is irresponsive to a competent question, the examiner may move to strike out what is irresponsive, whether it be competent evidence or not, but if competent, the adverse party has no such right. If an answer be relevant for any purpose it may stand as against a motion to strike out. If the question be incompetent the adverse party cannot "speculate" by waiting to see if the answer is favorable to him, and if not, moving to strike it out. He must object to the incompetent question. If, however, the question be competent and the answer incompetent, the adverse party may move to strike out the answer, and he does not lose this right by not objecting to the competent question.

The true rule under the latter circumstance was correctly stated by Mr. Chief Justice Elliott in *Jones* v. *State,* 118 *Ind.* 39, as follows: "The question was in form and substance a proper one, and, of course, could not have been successfully assailed, so that an objection would have been unavailing. The appellant, therefore, did not lose the right to move to reject the answer by failing to object to the question. Where the question is a competent one, and

the answer is incompetent, the correct practice is to move to strike out the answer."

It appears also that under similar conditions in Officer Autobato's testimony, the question was in fact objected to, and when allowed, an exception was prayed and granted, and that then upon the answer disclosing (as it likewise did in Officer Miller's testimony) the absence of an "admission" on the part of the defendant, a motion was made to strike out the answer and an exception taken to the refusal of this motion.

It would seem, therefore, that the action of the trial court in refusing appellant's motions to strike out the portion in question of the testimony of Officers Miller and Autobato, on the ground—*first,* that it was "hearsay;" and *second,* that it impeached the state's own witness, Knight, is fairly before us for review, unprejudiced by appellant's failure to object to the question asked Officer Miller.

Taking up the "hearsay" objection, it is urged on behalf of the state that evidence of the statements in question was admissible because they were made in the presence of the defendant and injuriously affected his rights. It is claimed that this fact alone is a sufficient criterion, and in support of this contention a quotation is made from the syllabus in *Donnelly* v. *State,* 2 *Dutcher* 601, as follows: "When a matter is stated in the presence of a person which injuriously affects his rights, and he understands it, the statement and his reply or silence are both admissible."

This is true where there are any circumstances from which a jury might properly find an express or implied *assent* to the truth of such statement from such reply or silence. But where, as here, there was neither silence nor any circumstances connected with the substance or the manner of the reply from which such assent of the accused could be inferred, the fact that the "matter was stated in the presence of the accused and injuriously affects his rights" is not in itself sufficient to render the statement evidential against him.

The case of *Donnelly* v. *State, supra,* was a case in which no reply whatever was made by the accused to the damaging

statements, and what this court really said in that case was: "The answer to the question would derive its value from its disclosing a direct or an implied admission by Donnelly (the accused) of the truth of the account which Moses then gave of the occurrence, and of the occasion which caused it, and not from the fact of the statement being a dying declaration of Moses. When a matter is stated in the hearing of one, which injuriously affects his rights, and he understands it and *assents to it, wholly or in part by a reply,* both are admissible in evidence; the answer, because it is the act of the party, who is presumed to have acted under the force of truth, and the statement as giving point and meaning to the action. So also *silence,* unless it be accounted for by some of the circumstances which have been specified (see the clause next hereinafter quoted), or other sufficient reasons, may be taken as a tacit admission of the facts stated, because· the person, knowing the truth or falsity of a statement affecting his rights made by another in his presence, under circumstances calling for a reply, will naturally deny it, if he be at liberty to do so, if he does not intend to admit it." And, in another place: "If it appeared that it (the statement) was made in the course of a judicial inquiry, or when circumstances existed which rendered a reply inexpedient or improper, or that fear, doubts of his rights, or the belief that his security would be better promoted by silence than by response, governed him at the time, then the testimony should not have been admitted; for the reason that the jury, *in such cases,* ought not to have been allowed to infer anything against the prisoner from his silence." The essential underlying principle governing all such cases, as was clearly stated in this opinion, is that it is an express or implied *admission* of their truth by the accused which renders the statements evidential.

The case of *State* v. *Rosa,* 43 *Vroom* 462, is also cited by counsel for the state in substantiation of his foregoing contention, but this case was also one where the accusing statements were received in silence by the accused, and the court said: "The statements were admissible, because if he (the

accused) did hear them and made no reply, his silence was evidence of an implied admission by him of their truth."

In *State* v. *Johnson,* 44 *Vroom* 199, the prosecution was for taking intoxicating liquor into an election booth on election day, and the Supreme Court said: "Nor is there error in permitting testimony that someone drinking the liquor called it 'Good beer.' This is objected to as 'hearsay.' But the case shows that the defendant was present at the time. Whether the defendant heard this or not was a question for the jury. If he did hear it and *was silent* his failure to disclaim was a circumstance for the jury."

In *State* v. *McFarland,* 54 *Vroom* 474, Mr. Justice Garrison, in delivering the opinion of this court, said: "Upon one point, however, all agree, including even those text-writers who erroneously treat the matter as an exception to the "hearsay" rule, and that is that, while the thing that is proved is the statement made to the party, the thing that proves it, *i. e.,* the thing that makes it evidence, is the act of the party himself, namely, his silence."

In the case at bar there was not *silence* on the part of the accused when the statement was made in his presence, nor was there any circumstance connected with either the substance or the manner of his reply from which an admission, partial or otherwise, of the truth of the statement, could be inferred. The evidence was simply that "He denied it." "Said it wasn't him." The fact, therefore, that the statements in question were injurious to the accused and were made in his presence, is not, under these circumstances, sufficient to make them evidential against him. 12 *Cyc.* 423.

The statements in question were, therefore, not admissible as evidence of an "admission." Were they "hearsay?"

"Hearsay evidence is that kind of evidence which does not derive its value solely from the credit to be given to the witness himself, but rests also in part on the veracity and competency of some other person." 1 *Greenl. Evid.,* § 99.

Thus, in *State* v. *Niesbbalski,* 53 *Vroom* 177, where defendant was indicted for felonious assault in participating in a "hold-up" robbery of a building association at one of its

meetings, it appeared that he was not arrested until four months after the "hold-up," and having been identified at the trial by only one witness out of the ten or twelve men who were "held-up," and who looked him over with a view of identifying him, but as to the rest of them, apparently could not, for they were not called, the officer who arrested the defendant was permitted to testify that he swore out the warrant upon information given him by two others (Danawiez and Nurzinski), who were also under indictment for participation in the same "hold-up." In reversing the judgment below because of the admission of this "hearsay" evidence, the Supreme Court, speaking in an opinion by Mr. Chief Justice Gummere, said: "By a necessary inference, it (the evidence in question) was a declaration that both Danawiez and Nurzinski had told the witness that the defendant had been one of the party engaged in the 'hold-up.' * * * The effect of this testimony, therefore, was to lay before the jury statements of these two men, not made under the sanctity of an oath, and not subjected to the test of a cross-examination, implicating the defendant in the crime charged against the three of them. That such statements were not evidential against him is too plain for discussion."

Under this reasoning, which we approve, it is quite clear that the officers, Miller and Autobato, could not be permitted to testify to Knight's identification of the defendant for the purpose of proving the sale of the stolen goods to him, or for the purpose of proving his identity with the man to whom they were sold.

We think, however, that the evidence was admissible for another purpose, and that was as tending to neutralize, i. e., to "discredit," the *adverse* effect of Knight's unexpected failure, when testifying for the state, to identify the defendant. The effect of this failure of Knight to identify D'Adame, who was sitting in full view of the witness and of the jury at the trial, was practically the same as if Knight had pointed to D'Adame and said: "This is not the man." The state therefore was placed in the unexpected position of having offered evidence to the jury that the defendant was not the man who

committed the crime. It had no reason to expect such a situation, for Knight had previously said that defendant *was* the man who committed the crime. The evidence was, therefore, clearly a "surprise." The state, having been thus surprised into offering evidence, the effect of which was exactly contrary to what it was endeavoring to prove, viz., the guilt of the defendant, had the right, if it could do so, to neutralize the effect of such evidence by proving the self-contradictory statements of the witness to show that such evidence was untrustworthy.

Under similar circumstances in *State* v. *Johnson,* 44 *Vroom* 199, the Supreme Court held that the state might ask its witness if he had not on a previous occasion, *i. e.,* before the grand jury, made a statement contradictory of his present testimony. Obviously this could only be done because of the "surprise" occasioned by the unexpected testimony, and to "discredit" its effect. The previous statement, not made in the presence of the defendant, and not subject to cross-examination by him, could not be evidential against him. Its admission depended entirely upon its effect as neutralizing the witnesses' unexpectedly adverse testimony, and for this purpose we think it might be proved as well by the testimony of other witnesses as by the admission of the witness in question.

Under this view when, to the "surprise" of the state, Knight impliedly testified (by failing to identify him) that defendant was not the guilty party, the state had the right to neutralize or "discredit" this evidence by showing by other witnesses a contradictory statement by Knight on a previous occasion. This was not to prove the truth of such contradictory statement, but to neutralize or withdraw the effect of the unexpected testimony. Professor Wigmore says: "Since, in the words of Chief Baron Gilbert, it is 'the repugnancy of his evidence' that discredits him, obviously the prior self-contradiction is not used assertively, *i. e.,* we are not asked to believe his prior statement as testimony, and we do not have to choose between the two (as we do choose in the case of ordinary contradictions by other witnesses). We simply set the two against

each other, perceive that both cannot be correct, and immediately conclude that he has erred in one or the other, but without determining which one. It is the repugnancy and inconsistency that demonstrate his error, and not the superior credibility of the prior statement. Thus, we do not in any sense, accept his former statement as replacing his present one; the one merely neutralizes the other as a trustworthy one. In short, the *prior statement is not hearsay,* because it is not used assertively, *i. e.,* not testimonially. The hearsay rule simply forbids the use of extra-judicial utterances as credible testimonial assertions; the prior contradiction is not used as a testimonial assertion to be relied upon. It follows, therefore, that the use of prior self-contradictions to discredit is not obnoxious to the hearsay rule." *Wigm. Ev.,* § 1018.

It may be urged that the effect of this doctrine might be that a party, desiring to prove something which was not in fact true, might call a witness to swear it was not true, and then, by calling other witnesses to testify that, on a previous occasion, when not under oath and not subject to cross-examination, the first witness had made a contrary statement, produce the effect of substantive proof of the untruthful fact desired, without in reality having had anyone testify to it. This, however, is not the case. As was stated by Wigmore in the same section: "It follows, conversely, that prior self-contradictions, when admitted, are not to be treated as assertions having any *substantive or independent testimonial value;* they are to be employed merely as involving a repugnancy or inconsistency; otherwise they would in truth be obnoxious to the hearsay rule." *Wigm. Ev.,* § 1018, and cases there cited.

The testimony of Officers Miller and Autobato, therefore, to the prior identification by Knight, was without substantive testimonial value as proof of the defendant's identity with the guilty party, and, doubtless, if the trial judge had been requested to so do, he would have instructed the jury to this effect. In fact, as a general rule, it may be said that a trial judge admitting evidence of this character, viz., evidence of contradictory statements (and the admittance of such evi-

dence is largely discretionary with him, depending upon the particular circumstances of each case), should in any event limit its force and effect to the purpose for which only it is admissible, viz., as tending to efface or neutralize the evidence which it discredits. He should also instruct the jury (explaining the reason, viz., because not given under oath and not subject to cross-examination, why the evidence is so limited in effect, for otherwise his instructions may fall upon deaf ears), that they are to entirely disregard it as in any way tending to prove the truth of the facts which it asserts; that they may, if they think it worthy of that effect, conclude that it withdraws from the case the evidence which it tends to discredit, just the same as if such evidence had never been introduced, but that beyond this they cannot give it any effect whatsoever. They may permit it to wipe the slate clean, but they must not permit it to substitute any other writing for that which it expunges. In a case barren of other direct proof of the facts which such contradictory statements would tend to prove, if admissible for that purpose, the absence of such instructions even when not requested, might be sufficiently injurious to warrant reversal, but in the present case there was ample other evidence from which the jury could find that the defendant was, in fact, the man who bought the stolen goods. We conclude, therefore, that the effect of the testimony in question was only to neutralize the substantive contrary testimonial result of Knight's failure to identify the defendant, and for that purpose it was admissible.

This also disposes of defendant's second objection to the evidence, viz., that it was an impeachment of the state's own witness. The evidence in question did not attack Knight's character or reputation for truth and veracity, nor did it in general impugn his credibility by tending to show him to be unworthy of belief. *Ingersoll* v. *English,* 37 *Vroom* 463. What it did do was to discredit the effect of certain specific testimony of Knight's by showing, by his self-contradictory statements, that such specific testimony was untrustworthy. This might be the case because of lapse of memory or honest

mistake, quite as well as because of intentional misstatement on his part. The evidence of the self-contradictory statements was an attack upon the reliability of the specific testimony of the witness and not an impeachment of the witness himself. Where the specific testimony comes as a "surprise" such an attack is admissible. *Ingersoll* v. *English, supra; State* v. *Johnson,* 44 *Vroom* 199; *State* v. *Kwiatkowski,* 54 *Id.* 650. In the latter case this court said, in an opinion by Chancellor Walker: "In the case at bar we find no attempt to impeach the particular witness' character for truth and veracity, but an attempt to revive his recollection as to matters which he had testified to before, and concerning which his memory appeared to have lapsed. The prosecutor was surprised at the testimony given on the trial of this case and clearly had the right to probe the witness as he did."

It is suggested that the state did not properly lay the ground for the introduction of these contradictory statements by first asking the witness Knight if he had not made them. Professor Wigmore points out (section 1027) that this rule requiring "preliminary warning" was first recognized in 1820 in the response of the judges in *"The Queen's Case,"* 2 *B. & B.* 313, and came as a surprise to the bar, and has not found favor in many of the states, including New Jersey. He cites *Fries* v. *Brugler,* 7 *Halst.* 81, where the Supreme Court said in an opinion by Mr. Chief Justice Ewing: "The necessity of propounding the question to the witness as the foundation of the production of other proof has, so far as I am informed, never been recognized here, and is not the law of our courts." In *McBlain* v. *Edgar,* 36 *Vroom* 634, this court decided that the rule was not applicable where the witness in question was a party to the suit, but there was a suggestion in the opinion that otherwise the rule might apply. We think that the application of the rule must rest largely in the discretion of the trial judge, depending upon the circumstances of each case, and upon whether there was fair opportunity to adhere to the rule without working injustice. In the present case no objection to the admission of evidence of the self-contradictory

statements on the ground that "preliminary warning" had not been given the witness Knight was made. If such objection had been made Knight might have been recalled to the stand and the omission supplied. Under such circumstances the warning may fairly be considered not to be indispensable.

Exception is also taken to the following portion of the charge of the court to the jury: "Guilty knowledge may be found by the jury where the defendant receives the goods under such circumstances as would satisfy a man of ordinary intelligence and caution that they were stolen."

This language was used by the Supreme Court in an opinion by Mr. Justice Fort in *State* v. *Goldman,* 36 *Vroom* 398, quoting from the syllabus in *Commonwealth* v. *Finn,* 108 *Mass.* 466, and was cited with approval by the same court in *State* v. *Simon,* 41 *Vroom* 407. It is claimed that the true rule was stated in *State* v. *Feuerhaken,* 96 *Iowa* 299, where the court charged the jury: "If you find that all the facts and circumstances surrounding the receiving of the goods by the defendant were such as would reasonably satisfy a man *of defendant's age and intelligence* that the goods were stolen, or if he failed to follow up such inquiry so suggested for fear he would learn the truth and know that the goods were stolen, then the defendant should be as rigidly held responsible as if he had actual knowledge."

While such might be the proper rule under circumstances calling for its use, it is sufficient to say in answer to the objection to the language used in the present case, that the presumption is that men of full age are, at least, of "ordinary intelligence and caution." So far as we are able to discover there was no evidence in this case showing that the defendant was not a man of at least "ordinary intelligence," but even if there had been such evidence, if defendant had desired recognition of it as a basis for entitling him to a lower standard of accountability than men of "ordinary intelligence" are charged with, it was his place to have asked the court for particular instructions upon that point. This was not done.

The judgment is affirmed.

Mee v. Montclair.                    *84 N. J. L.*

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, TREACY, JJ.    11.

*For reversal*—None.