## BOROUGH OF ROOSEVELT v. HERMAN SHAPIRO ET AL.

Argued December 8, 1913—Decided March 2, 1914.

1. A deed described a course as "beginning at a stake planted on the east side of the millpond creek on the north side of a small worm putting out of a small creek." *Held*, that the construction of the language was for the court and could only be satisfied by a location substantially at the junction of the worm and the creek on the east side of the one and the north side of the other.

2. Where the controversy was as to the width of a highway along defendant's land, and there was testimony that the line of the highway was a straight line without an offset at defendant's property, it was relevant to show where the line was at an adjoining property, but this could not properly be shown by proving a dedication by the adjoining owner.

3. A map made by a witness *held* admissible to contradict him, but not as proof of any fact in issue. *State* v. *D'Adame*, 55 *Vroom* 386, followed.

4. Deeds made by a landowner tending to show the dedication of a highway to the width of sixty feet *held* not evidential of the width of the highway as against an adjoining owner.

On appeal from the Middlesex Circuit Court.     .

For the plaintiff-respondent, *George S. Silzer* and *Russell E. Watson.*

For the defendants-appellants, *Alan H. Strong.*

The opinion of the court was delivered by

SWAYZE, J.  The plaintiff sued in ejectment to recover land occupied by part of defendant's building, claiming that it was within the limits of an ancient highway.  The north line of the highway was not in dispute; the question was the location of the south line, and this depended on whether the highway was sixty feet wide, as the plaintiff claimed, or only forty-four, as the defendant claimed.  The plaintiff by way of evidence to sustain its claim offered an ancient deed for land adjoining the tract of which defendant's lot was a part, and insisted that the boundary line between the two tracts, which ran to the southerly side of the highway fixed the location in accordance with the plaintiff's claim.  The description and location of this line therefore became important.  It is described in the ancient deed as "beginning at a stake planted on the east side of the millpond creek, on the north side of a small worm putting out of a small creek, and from thence running north twenty-five degrees, fifteen minutes east sixteen chains and fifty links to the southwest side of the

road from the New Blazing Star ferry to Bridgetown." The description of the closing course is also important: "thence down along said creek as it runs the several courses thereof to the place of beginning." The specific controversy was with reference to the true location of the beginning corner. The defendant located it at the junction of the worm and the creek; the plaintiff at the head of the worm two hundred and sixty-five feet nearer the highway. The learned trial judge left the matter entirely to the jury, although he told them that it turned on the construction of the deed and "the accuracy of distances and directions from what is called a worm or the side of a worm which empties into a small creek." This permitted the jury to adopt either the construction claimed by the plaintiff or that claimed by the defendant. The defendant excepted to so much of the charge as permitted the jury to consider for the purpose of determining the southerly line of the highway, a measurement from the head of the worm. We think this exception fairly presents the question whether the construction of this deed was for the court or for the jury. We see nothing to take the case out of the ordinary rule that imposes this duty on the court. There was no question of location left in doubt to be decided by the jury when the meaning of the words describing the beginning monument was settled. We think it equally clear that a location of the beginning corner at the head of the worm does not satisfy the words of the deed. Such a location is not on the east side of the millpond creek; it may indeed be to the east of the creek, but it does not fulfill the words of the deed that require it to be *on the side* of the creek. Moreover, if the beginning corner is located at the head of the worm the description of the tract conveyed will not close. The closing course follows the courses of the creek, and this could not end at a point two hundred and sixty-five feet away therefrom. The language describing the beginning corner can only be satisfied by a location substantially at the junction of the worm and the creek on the east side of the one and the north side of the other. It is

said that the effect of this construction is to make the distance of the first course fall short of reaching the highway. That seems to be true; if so, it is a case for the application of the rule that the distance must yield to the monument, not the monument to the distance, and in this case the only monument that can be fixed independently is the beginning corner; the highway is indeed a monument, but its location is the very point in dispute, while the location of the beginning corner can be fixed by the natural monuments—the creek and the worm—and by the closing line of the tract. We think it was error for the trial judge to leave the construction of the deed to the jury.

There is another error to which attention must be called. The defendant was allowed to put in evidence a map of an adjoining tract made in 1903, which delineated the highway as sixty feet wide, and also deeds for lots by reference to this map. In view of the testimony that the northerly line of the highway was a straight line without the offset of sixteen feet at the defendant's property, it was relevant to show where the line was at an adjoining property, but this could not properly be shown by proving a dedication by the adjoining owner in 1903. As to the defendant, the map and deeds were *res inter alios acta.* The plaintiff now seeks to justify the admission of the evidence on the ground that it tended to contradict one of the defendant's witnesses and affected his credibility. In that aspect the map is within our recent ruling in *State* v. *D'Adame,* 55 *Vroom* 386. The only difference is that in the cited case the contradiction was a contradiction of the party's own witness; here it is of the witness of an adverse party; and the case is stronger for the admissibility of the evidence. But although admissible for this purpose, it was not admissible as proof of any fact in issue. We were careful in State *v.* D'Adame to discriminate between the admissibility of the evidence as affecting a witness' credibility and its probative effect. The rule permits contradictory statements by the witness as to relevant facts to affect his credibility only, and it does not permit statements of others.

The deeds which were admitted were of this latter character; they were not made by the witness but by the landowner, and they were not offered for the purpose of affecting the credibility of the witness but for the purpose of showing the dedication of the highway to the width of sixty feet by the adjoining owner. This was not evidential against the present defendant; he could not be deprived of his property, if it was his, and of the building thereon, by any act of his neighbor whose interest might perhaps be promoted by a widening of the highway. Indeed this evidence of dedication militated against the plaintiff's own case, which rested upon the claim that the ancient highway was already sixty feet wide and needed no dedication in 1903. In any aspect of the case the deeds were improperly admitted, and the effect of the map should have been carefully limited to the only purpose for which it was admissible.

The judgment must be reversed to the end that a *venire de novo* may be awarded.

WHITE, J. (concurring). My vote for reversal is based solely upon the second of the foregoing reasons, the erroneous admission of the 1903 map and deeds. I dissent from the view of the majority opinion upon the first reason, viz., the construction of the description in the ancient deed. I am unable to agree that the court should say as a matter of law that the words "small worm" in the sentence, "Beginning at a stake planted on the east side of the Mill Pond creek, on the north side of a small worm putting out of a small creek," indicate a body of water not a part of the Mill Pond creek. The word "creek" is an apt and technical name for a body of water of a certain general character, whereas the word "worm" has no such meaning. It manifestly, as here used, refers to a small body of water shaped like a worm and, as I view it, a part of the body of water to which the name "creek" is here given. I take it the language is in effect the same as if it had been "on the east side of the Mill Pond creek on the north side of a horseshoe curve." Clearly "horseshoe curve"

used in this sense would refer to a part of the creek, and so, in my judgment, does the word "worm" refer to a part of the creek. If instead of the word "worm" the word "lake" had been used, thereby indicating clearly by an appropriate name a body of water distinct from the creek, I should concur in the construction of the majority opinion, because the word "lake" is an apt and technical designation of a body of water different from and of a different character from that properly named a creek. The word "worm," however, has no such meaning in any dictionary and, it would seem to me, should be considered as indicating descriptively a peculiar form of a certain part of the creek. The adoption of this view, under the facts proved in this case, renders the description in question a sensible one, "closing up" in every particular instead of ending in the middle of a field two hundred and sixty-five feet away from any possible location of the monument mentioned.

I think therefore the trial judge was right in permitting the jury to locate the starting point of this description, as a question of fact, in accordance with this view.

*For affirmance—*MINTURN, J. 1.

*For reversal—*THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, KALISCH, BOGERT, VREDEN-BURGH, CONGDON, WHITE, HEPPENHEIMER, JJ. 12.