THE STATE, DEFENDANT IN ERROR, v. CORNELIUS J. HARRINGTON, PLAINTIFF IN ERROR.

Submitted March 22, 1915—Decided June 14, 1915.

On error to the Supreme Court, in which the following *per curiam* was filed:

"We think the trial court committed no error in refusing to permit the defendant to introduce in evidence a conversation between himself and one Nemrow, his partner, tending to show that in the distribution of the work of running the partnership business Harrington was to devote his time to the management of the bar room and the sale of liquor therein. Our reason for so considering is that no arrangement between the partners could relieve Harrington from responsibility for maintaining a disorderly house, if their hotel was run in such a manner as to constitute it such a place with Harrington's knowledge; and the agreement between himself and his partner was not evidential on the question of his knowledge, or lack of it. For the same reason the exclusion of the testimony of Froelich upon matters of the same general character was proper.

"We think, further, that the attack upon the charge to the jury is without merit. The interrogation of the court to the jury—after reciting some of the testimony: 'In view of these circumstances how can you say that Harrington had no knowledge of the manner in which this place was being conducted, and of the occurrences that were constantly taking place there?' is not the laying down of a legal principle, or a usurpation by the court of the function of the jury. It is a mere indication of the effect which the evidence produced upon the mind of the trial judge. That he did not intend by it to indicate to the jury that they must be controlled by his view of the force of the testimony is shown by what he said immediately after, namely: 'That is a question of fact for your determination.'

"The characterization by the court of the witness Freund as 'the clerk who could remember nothing of the statement which he admitted he made to the prosecutor, and could remember none of the incidents which he had described there,' was justified by Freund's own statement made upon the witness-stand.

"The instruction in reference to the effect of flight by a person charged with crime that it 'is deemed, when unexplained, to raise some presumption of guilt akin to the presumption deemed to arise upon the fabrication of false evidence, or the suppression of true evidence,' is taken *verbatim* from the opinion of the Court of Errors and Appeals in *State* v. *Jaggers*, 71 *N. J. L.* 281, and must be accepted as the law upon this subject in this state until that court sees fit to modify it.

"The instruction that 'If there were isolated instances of violation by the secret conduct of the employes, they would not be habitual, and, therefore, it could not be a disorderly house; but if continued and habitual then it is for you to say whether the defendant permitted it,' is so plainly sound as a legal proposition that it needs no discussion to justify it.

"The following instruction is also challenged: 'The offence of keeping a disorderly house does not necessarily consist in the fact that the keeper himself commits any of these crimes, but that he permits his house to be made a nuisance by habitually permitting these offences there, whether by himself or others. And it is a question of fact for the jury to determine whether satisfactory evidence has been produced to show that the defendant kept, maintained or controlled, or, as our Supreme Court has held, had the power to control the place; or permitted or suffered it to be so kept and maintained, having the power to prevent it. The question of his control or permission, as affecting his guilt or innocence, is for you to determine.' It is claimed to be injuriously erroneous, because, by it, as the defendant asserts, the jury was told, in effect, that if he controlled the place, that, in itself, was enough to justify his conviction. Although the thought of the court was, perhaps, not clearly expressed, we think it fairly appears from the language used that the jury

were told that the defendant, in order to justify his conviction, must be in control of the premises, and, also, must permit it to be used for unlawful purposes; and that whether the defendant controlled it, or whether, if he did, he permitted it to be used as a bawdy house, was for them to decide. The trial judge evidently intended to charge the instruction approved by this court in *Bindernagle* v. *State,* 60 *N. J. L.* 307, and we think he did so with sufficient accuracy.

"This disposes also of the objection to what was said by the trial court to the jury upon their return into court and requesting further instructions upon this point.

"It was proper for the court to refuse to charge that 'if an employe of the hotel for his private reward or gain brought a woman of loose character to the premises of the defendant, without the knowledge of the defendant, and said woman of loose character violated the law on the said premises without the knowledge of the defendant, the defendant should be acquitted. If the jury are not convinced beyond a reasonable doubt that the defendant permitted an employe, with full knowledge, to bring to the hotel women of loose repute, to violate the law, then the jury cannot draw any inference against the defendant because an employe of the defendant either induced, incited, participated in, or gained by, violations of the law at the premises known as the Hotel Navarre.' The request is a unit. If any part of it is unsound, the whole must fall. The mere fact that an employe of the hotel brought a woman of loose character on the premises without the knowledge of the defendant, and that she violated the law there, would afford no ground for convicting the defendant; but it would equally afford no ground for acquitting him if the law was constantly violated on the premises by other parties with his knowledge; and that is what the court was requested to charge the jury.

"The request disregards all of the proof of the state showing habitual violations of the law, and asks the court to direct a verdict of acquittal in case the jury are satisfied that an employe of the hotel brought a woman there for immoral purposes without the knowledge of the defendant.

"The request to charge the jury upon the law as to evidence sufficient to charge the defendant with knowledge that prostitutes or persons alleged to have frequented said hotel were prostitutes, was properly refused. Requests to charge should embody some legal principle. If the defendant desired any specific instruction upon this point he should have submitted it.

"The arrest of one of the state's witnesses in view of the jury, after he had left the stand, is no ground for reversing the judgment under review. So far as the case discloses, his arrest may have been for some offence entirely disconnected with the trial of the case. But even if the evidence showed that it was for perjury committed on the witness-stand, that would not vitiate the trial.

"We conclude that the judgment under review must be affirmed."

For the plaintiff in error, *Frederick R. Lehlbach, Alexander Simpson* and *Thomas S. Henry*.

For the defendant in error, *Louis Hood* and *Frederick F. Guild*.

PER CURIAM.

The judgment of the Supreme Court is affirmed for the reasons stated in the *per curiam* filed in that court.

With respect to the language of the charge as to the effect of the flight of the accused, it is evident from the context that the word "presumption" as there used is the equivalent of "inference," which is one of the definitions given in Webster's New International Dictionary, as follows: "5 *Law.* An inference as to the existence of one fact not certainly known from the known or proved existence of some other fact (called a presumption of fact or logical presumption)." The lexicographer then points out that this is in contradistinction to a presumption of law, a matter that we have recently dealt with somewhat fully in our opinion in *Bower* v. *Bower,* 78 *N. J. L.* 387.

Inasmuch as the chief function of the *presumption of law* concerns the production of proof it would be greatly over-straining the point to hold that the word "presumption" when used in a charge imparted to the jury any such notion or any other idea than that of an inference, which is its meaning in common acceptation whatever the niceties of legal phraseology may seem to render desirable. There was neither legal error nor manifest injury to the defendant in this portion of the charge.

*For affirmance*—THE CHANCELLOR, GARRISON, SWAYZE, TRENCHARD, BERGEN, MINTURN, BLACK, VREDENBURGH, WHITE, TERHUNE, HEPPENHEIMER, JJ. 11.

*For reversal*—None.