THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. KAROLA PRUSER, PLAINTIFF IN ERROR.

Argued January 23, 1941—Decided August 20, 1941.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and PERSKIE.

For the plaintiff in error, *Scott M. Long, Jr.*

For the state, *John Drewen,* assistant attorney-general (*William Hegarty,* prosecutor of the pleas, on the brief).

The opinion of the court was delivered by

PERSKIE, J. The basic question requiring decision on the facts of this case, which involves unlawful registration and unlawful voting, is whether the trial judge misapplied, as claimed, the maxim—*ignorantia juris neminem excusat*—in denying the motion of plaintiff in error for an acquittal at the end of the state's case.

Plaintiff in error was convicted by a verdict of a jury, in the Morris County Court of Quarter Sessions, on an indictment found under the section of our election laws designated as *N. J. S. A.* 19:34-20.

The indictment consists of two counts. The first count charged that the plaintiff in error, late of the City of New York, at the general election held for the first district of Kinnelon, in the County of Morris, on November 8th, 1938, "did solicit the registering of her name on the registry list of said election district * * * then and there knowing that she was not a legal voter in such district, * * * that she had not resided in the State of New Jersey for a period of one year, nor in the County of Morris five months before said general election * * *." The second count charged that at the same time and place, the plaintiff in error "knowing that she was not a qualified voter, did vote at said general election, * * * then and there knowing that she had not resided in New Jersey for a year, nor in Morris County five months next before said general election * * *."

Concededly, the state's prosecution of the plaintiff in error was, and is, based upon the theory that the knowledge contemplated by the language of the statute, upon which the indictment was found, means knowledge of the facts which disqualified or disentitled plaintiff in error to register and to vote and not knowledge of the law applicable to those facts. The state "frankly asserts that in the trial of this indictment it was the state's theory that the offense charged is within the maxim—*ignorantia juris neminem excusat.*"

Pursuant to its theory, the presentation of the state's case was short.

A stipulation was offered and objected to, but the objection was withdrawn and the stipulation was read into the record. It stated that plaintiff in error registered on October 14th, 1938, in New York City for the election then pending, had been registered as residing at 1665 York avenue, had been thirteen years in this country, one year in the district and had certified to the truth of these facts over her own signature. The stipulation further stated that on November 8th, 1938, plaintiff in error had registered and voted in Kinnelon Bor-

ough, Morris County. Additionally, the state produced the clerk of the New York Board of Elections (Thomas F. Cummings) who testified as to the New York election procedure. He produced the registry book showing the same facts as they appeared on the stipulation regarding the New York registration of the plaintiff in error. Technically the book was not offered in evidence, but it seems to have been treated as evidential. The state then rested. A motion was made for the plaintiff in error for a directed acquittal on the ground that there was "no evidence on which defendant could be found guilty as charged in the indictment." In other words, the state had failed to prove criminal intent. *State* v. *McBarron,* 66 *N. J. L.* 680; 51 *Atl. Rep.* 146, which reversed the affirmance of the conviction by the Supreme Court (Magie, C. J., and Justices Dixon, Garrison and Gummere, opinion by Garrison, J.), *McBarron* v. *State,* 63 *N. J. L.* 43; 32 *Atl. Rep.* 777.

The theory of the plaintiff in error was, and is, that the knowledge contemplated by the statute made it necessary for the state also to prove that plaintiff in error had knowledge of the legal effect of the facts stipulated.

Pursuant to that theory plaintiff in error proceeded with her proofs. It will serve no useful purpose to detail them. For it is not argued that no case for the jury was made out at the end of the entire case. Indeed, no such argument could be successfully made. The proofs at that juncture of the case unquestionably required the submission of the case to the jury and amply supports the verdict of the jury. It will therefore suffice to say in passing that the proofs for plaintiff in error were aimed to show that she was ignorant of the legal effect of the proofs adduced by the state, and, therefore, she was free from any corrupt or guilty knowledge. *Halstead* v. *State,* 41 *N. J. L.* 552, 598, but read comment thereon in *State* v. *Kuehnle,* 85 *Id.* 220, 225; 88 *Atl. Rep.* 1085, for the proper construction of statutory offenses.

At the end of the entire case plaintiff in error again moved for a directed acquittal for the same reason urged for her at the end of the state's case. The trial judge denied that motion, and in a comprehensive, accurate and fair charge submitted

the case to the jury. As already observed, the jury returned a verdict of guilty as charged. Plaintiff in error was adjudged to pay a fine of $350 and was placed on probation for a period of one year. She now appeals. The appeal is before us on a strict writ of error and also on a certificate of the entire record of the proceedings had at the trial pursuant to *N. J. S. A.* 2:195-16.

Plaintiff in error sets down 38 assignments of error and three specifications of causes for reversal. Seven points are argued. But one requires discussion.

Did the trial judge err, as claimed, in refusing to direct a verdict of acquittal at the end of the state's case when so requested? We do not think so.

It is altogether settled that contrary to the rule in civil cases (*Van Cott* v. *North Jersey Street Railway Co.,* 72 *N. J. L.* 229; 62 *Atl. Rep.* 407; *McGee* v. *Kraft,* 110 *N. J. L.* 532; 166 *Atl. Rep.* 80; *Borough of Hawthorne* v. *Jowett,* 121 *N. J. L.* 38; 1 *Atl. Rep.* (2d) 431), the rule in criminal cases is that when, as here, the entire record of the proceedings at the trial is returned with the writ of error, pursuant to the above cited statute, the plaintiff in error is entitled to have the appellate court consider whether such plaintiff in error suffered manifest wrong or injury in the refusal to direct a verdict at the close of the state's case even though later in the case sustaining evidence is received which makes out a case for the jury. See cases collated under Point 3 in *State* v. *Fay,* 127 *N. J. L.* 77. The test, under the cases, as pointed out in the Fay case, is "whether upon the evidence as it stood at the time the motion was made there was a case for the jury." What was the situation at the end of the state's case? We hold that the state had made out a case for the jury.

True, the state was obliged to prove the knowledge charged. *Cf. State* v. *Kuehnle, supra; State* v. *Silverman,* 116 *N. J. L.* 242; 183 *Atl. Rep.* 178. But it is equally true that the state had supplied such proof. It was open to the jury fairly and legitimately to deduce from the acknowledged truth of the facts stipulated that plaintiff in error well knew that she was not in fact a resident of, *i. e.,* domiciled in, the Borough

of Kinnelon, Morris County, where she registered and voted on November 8th, 1938, when only a little over three weeks prior thereto she registered from her self-acknowledged residence, her true domicile, in New York for the election there to be held on November 8th, 1938. *Cf. State* v. *Atti,* 127 *N. J. L.* 39.

The state was not obliged to prove, as claimed, that plaintiff in error had knowledge of the legal effect of the proofs adduced by the state. Plaintiff in error was legally charged with such knowledge. *Cf. State* v. *Atti, supra; State* v. *Fay, supra. Ignorantia juris neminem excusat.*

If the theory of the plaintiff in error were sound—and we hold that it is not—then a preference, unknown to the criminal law, would be given to the stupidity, to the ignorance and to the evil-mindedness of criminal wrongdoers. Such a preference has nothing in morals, in public policy, or in justice for its support. 1 *Wharton on Criminal Law* (*12th ed.,* 1932), 142, says this: "If ignorance of a law were a defense to a prosecution for breaking such law, there is no law of which a villain would not be scrupulously ignorant. The more brutal, in this view, a man becomes, the more irresponsible would he be in the eye of the law, and the worst classes of society would be the most privileged. No penal law could be enforced, because there is no penal law a knowledge of which, by a due degree of self-stupefaction, could not be precluded. As, however, it is a postulate of penal laws that they should be obeyed, it is a condition of those laws that ignorance of them should be no defense to an indictment for the violation." *Cf. Bishop on Criminal Law* (*9th ed.,* 1923), 198, § 294, ¶ 3.

Thus it has become a generally admitted principle, one deeply rooted in criminal jurisprudence, that "ignorance of the law is not a defense." *Cf. Halstead* v. *State, supra* (at *p.* 589). Especially is that true when, as here, both the fundamental law of our state (article 2, paragraph 1, of our State Constitution, requiring a residence, *i. e.,* domicile, in the state for one year and in the county for five months) and the provisions of the statute involved, are clear, settled and subject to but one inescapable conclusion. *Cf. Cutter* ads. *State,* 36 *N. J. L.* 125, 127, 128; 22 *C. J. S., Criminal Law,* 114, § 48.

If the law were otherwise then "fraudulent conduct" at elections would be rampant. *Cf. Wilentz* v. *Galvin,* 125 *N. J. L.* 455, 457; 15 *Atl. Rep.* (*2d ed.*) 903. Characterizations such as the "honesty, integrity and inviolability of the ballot" (*State* v. *Fay, supra*) would become meaningless. We cannot subscribe to any such logic. It would make easy the approach to the overthrow of the integrity of our elections. If pursued it would result in consequences even more serious to the interests of the state and its citizens.

The case of *State* v. *McBarron, supra,* is clearly distinguishable. Here, unlike in that case, defendant admitted knowledge of the facts. *Cf. State* v. *Atti, supra* (at *pp.* 44, 45). What we have said in the case of *State* v. *Atti, supra,* and *State* v. *Fay, supra,* in so far as it relates to the points argued in the case at bar, is dispositive of those points. The other points argued and not covered by what we said in the two cases last referred to, or by what is said in the instant case, do not, as we have already observed, merit further discussion.

Judgment is affirmed, with costs.