**UNITED STATES v. MAGGIO et al.**
**No. 7819.**

Circuit Court of Appeals, Third Circuit.

Argued Dec. 1, 1941.

Decided Jan. 30, 1942.

As Amended on Denial of Rehearing
March 4, 1942.

Harold Simandl, of Newark, N. J., for appellant Ippolito.

Anthony A. Calandra, of Newark, N. J., for appellants Maggio, Ciccone, and Di-Nola.

Charles A. Stanziale, Asst. U. S. Atty., of Trenton, N. J. (Charles M. Phillips, U. S. Atty., of Trenton, N. J., on the brief), for appellee.

Before BIGGS, MARIS, and GOOD-RICH, Circuit Judges.

MARIS, Circuit Judge.

The defendants, Anthony Maggio, Carl Ippolito, Gughelimo Ciccone and Bartholomew DiNola were convicted upon all five counts of an indictment which charged them with unlawfully engaging in the business of distillers, possessing an unregistered still, failing to give notice of the still, fermenting mash fit for distillation in a building not authorized as a distillery and conspiring to violate the internal revenue laws relating to stills.[1] Each of the defendants contends that the government failed to prove its charge as to him and that the trial court, therefore, erred in refusing his motion to direct a verdict of acquittal. In addition the defendants have assigned as grounds for a new trial alleged prejudicial errors which occurred in the course of the trial.

About 8 o'clock in the evening on February 24, 1940, police seized a quantity of sugar in bags and some empty five gallon cans in a garage at 416 Cuyler Avenue, Trenton, New Jersey. They arrested Joseph Bematre in the immediate vicinity of the garage. The next morning they raided the premises at 1060 Revere Avenue, Trenton, New Jersey, and seized a still, mash and alcohol. The mash was fit for distillation and the alcohol fit for beverage purposes. No tax had been paid upon the alcohol or the mash. The still was unregistered.

The testimony of Bematre disclosed that in the early part of January a meeting took place at the home of Ciccone. Bematre, Angelo Merino, Popkin, Ciccone, DiNola and Ippolito were present. At this meeting the parties discussed where to get parts for a still and decided that Ciccone was to get the parts and Ciccone and Anthony Lamantia were to install them. It was also decided that all were to share equally in the profits. A few days later the same persons and Lamantia met at Lamantia's house. Ciccone was given $800 with which to buy the parts. Ciccone, accompanied by Bematre, Ippolito, Di Nola, Popkin and Merino, bought some of the parts at Morris Gordon's shop in Trenton. Ciccone and Bematre bought other parts in New York. Bematre rented the garage at 416 Cuyler Avenue and temporarily the equipment for the still was kept there. Later sugar was stored there and at times a truck, bearing the legend "Seaside Fisheries". Bematre also rented the home of William Biondi at 1060 Revere Street and the parts for the still were taken there during the night. The still was installed by Ciccone, Lamantia and Biondi. Some time about the middle of February, 1940, Bematre, Ippolito, DiNola, Ciccone, Biondi, Popkin and Lamantia gathered during the evening at the still premises to determine what was wrong with the installation of the parts. In the same month a meeting was held at Bematre's room. All four defendants were present at this meeting. More money was needed for the still and the purpose of the meeting was to collect from those who had not contributed their share. About a week before the raid Bematre, Popkin, DiNola, Lamantia and Ciccone were again present at the still.

In addition to Bematre's testimony the evidence as to each of the defendants was as follows:

Carl Ippolito: During approximately six weeks prior to the raid Ippolito was frequently seen in the company of Bematre, Ciccone, DiNola, and Marcanthony.

Gughelimo Ciccone: Lamantia, when called as a government witness testified that Ciccone offered him a job for $50 a week and that several days after the raid on 1060 Revere Avenue Ciccone showed him a newspaper clipping of a picture of the house and said "There goes two weeks work and that is where I wanted you to work." On the night of February 24, 1940, Ciccone took the witness for a ride on Revere Avenue and asked him to see whether there were any police officers around. In the early morning of February 25, 1940, Ciccone said to a police officer with whom he was acquainted, "Do you know anybody on Revere Avenue, there's a grand in it for you if you get that cop away for two hours." During January and February, 1940, Ciccone was seen visiting Bematre, was overheard talking about yeast and sugar and was seen buying lead pipe in New York. Later Lamantia was called as a witness for the defendants and testified that it was Bematre who offered him the job and not Ciccone. He also testified that he had a grudge against Ciccone.

---

[1] Joseph Bematre, William Joseph Biondi and Joseph Marcanthony, pleaded guilty at a prior trial and a severance was granted as to Mildred Forconi, Felix Forconi, Sidney Popkin, and Morris R. Gordon, all of whom were joined as defendants in the indictment.

Anthony Maggio: An oil burner which Maggio purchased in November or December, 1939, was found during the raid attached to the steam boiler used in the distillery at 1060 Revere Avenue. Maggio and Marcanthony borrowed the Seaside Fisheries truck and used it to transport three water tanks from Morris Gordon's shop. Maggio was seen in the company of Bematre, Marcanthony, Biondi, Ippolito, Ciccone and DiNola. A mysterious telephone call made by Bematre and Marcanthony, in which it was said that "The spaghetti is hot, meet me at Jersey Hotel at midnight," was made to the home of Maggio's uncle, where Maggio was living at the time. During January or February, 1940, Maggio had registered at the Jersey Hotel.

Bartholomew DiNola: Several witnesses testified that they saw DiNola driving in the vicinity of 1060 Revere Avenue from midnight February 24, 1940, to about 4 A. M. the following morning. DiNola was in the car when Ciccone offered a police officer a thousand dollars if he could get the police away from Revere Avenue for two hours. DiNola was acquainted with the other three defendants and with Bematre.

■ The foregoing statement of the evidence disposes of the contentions that the defendants were entitled to directed verdicts of acquittal. We think there was sufficient evidence as to each of the defendants to justify its submission to the jury.

■ I. The defendants Ippolito and DiNola contend that the trial court erred in denying their respective motions for a directed verdict of acquittal when the government first rested and that it abused its discretion in permitting the government, over objection, to reopen its direct case and allow the testimony of Bematre to be introduced against them. The order in which testimony is presented at a criminal trial is solely within the discretion of the trial judge.[2] We see no basis for holding that the trial judge abused his discretion in permitting the testimony of Bematre to be offered out of order. On the contrary the fact that that testimony was not available to the government until a few minutes before it was offered makes it clear that the court's action was quite proper. The defendants rely upon State v. Pruser, 127 N.J.L. 97, 21 A.2d 641. We do not pass upon the soundness of the rule announced in that case for we are satisfied that it is not applicable here. In the case before us the government's case cannot be considered to have been closed until all of its evidence, including the testimony of Bematre, had been introduced. As thus augmented there was clearly sufficient evidence to go to the jury. It is unnecessary for us to consider the academic question whether at the time the government originally rested its case the defendants' motion for directed verdicts should have been granted. The trial of a criminal case is not a game in which a guilty defendant is entitled to go free merely because, at an intermediate stage of the proceedings the government through no fault of its own has not been able to offer evidence, later procured and offered, which establishes the defendants' guilt.

II. Mrs. Hahn, called as a witness for the prosecution, was asked on direct examination if she could identify any of the men then present in the court room as having been patrons during January and February, 1940, in a Trenton restaurant in which she was employed as a waitress. She identified Bematre and Marcanthony but testified that she could not identify any of the four defendants. The government pleaded surprise and was granted leave by the court to examine the witness as to prior contradictory statements made by her. The United States attorney elicitated the information that she had at one time identified the picture of Maggio as the picture of one of the men present at the restaurant and had signed a statement to that effect on May 21, 1940.

■ The defendants contend that what the prosecution did was to impeach its own witness and that under pretext of showing a prior contradictory statement by that witness injected into the evidence much that was hearsay. The strict rule is that under no circumstances may a party impeach his own witness.[3] A rather general modification of this rule, accepted by the Federal Courts[4] and by the courts of the State of New Jersey is that a witness

---

[2] See United States v. Montgomery, 3 Cir., 1942, 126 F.2d 151, in which the authorities are collected.

[3] Several reasons are assigned in the cases for this rule, all of which are vigorously attacked by Professor Wigmore in his treatise on Evidence (Third Edition) §§ 896–903.

[4] Di Carlo v. United States, 2 Cir., 1925, 6 F.2d 364; Curtis v. United

may, with leave of court, be examined as to prior contradictory statements if his testimony at the trial comes as a surprise to the party calling him as a witness. In New Jersey the courts have explained this modification of the rule by stating that the purpose of such examination is not to impeach the witness in the sense of an attack upon his character or reputation for truth and veracity but rather to discredit or neutralize the effect of certain of his specific testimony by showing by his self-contradictory statements that such specific testimony was untrustworthy. State v. D'Adame, 84 N.J.L. 386, 86 A. 414, Ann.Cas.1914B, 1109. In the Federal Courts the rule was early modified so as to permit questioning for the purpose of refreshing the recollection of the witness. Hickory v. United States, 151 U.S. 303, 309, 14 S.Ct. 334, 38 L.Ed. 170. The trial court was entitled to accept the statement of the United States attorney that he was surprised by the testimony of the witness and thereupon exercise its discretion in permitting the examination as to the prior self-contradictory statements. United States v. Graham, 2 Cir., 102 F.2d 436. Certainly the trial judge is not required in every such case to interrupt the trial in order to investigate whether the allegation of surprise is justified by the facts. The question as to whether the defendants were or were not in a certain restaurant within a certain period of time had no direct or great significance. Its importance was no doubt magnified by the manner and extent of the examination. We do not find, however, that the examination was in excess of the right of the government to refresh the recollection of the witness and to give her an opportunity to reconsider her testimony.

█ III. A witness testified, over objection, that Ciccone rented a house in Asbury Park where he intended to install a still. After it became clear that the testimony as to the rental of the Asbury Park house would not be connected by the government with any of the charges in the indictment the trial court ordered the testimony stricken and instructed the jury to disregard it. Even though this evidence of another crime was inadmissible (Beyer v. United States, 3 Cir., 1922, 282 F. 225; Thompson v. United States, 3 Cir., 1922, 283 F. 895) it does not necessarily follow

that the erroneous admission amounted to reversible error. Section 269 of the Judicial Code, 28 U.S.C.A. § 391, which is our guide in cases such as these provides that "On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties." We think that in view of the action of the trial court the effect of the wrongful admission of this evidence was not such as to substantially affect the rights of the defendant Ciccone. Beyer v. United States, supra, and Thompson v. United States, supra, relied upon by the defendants are not apposite, however, for in neither was an effort made to eradicate the effects of the inadmissible testimony.

█ IV. Prior to Bematre's volunteered testimony the government's case against the defendant Maggio was to a large extent dependent upon circumstantial evidence. The government attempted to prove as one of those circumstances that during the period immediately preceding the raid upon the Revere Avenue still Maggio was in fairly constant communication with others involved in the still enterprise. During this period Maggio lived at 506 South Sixth Street, Vineland, New Jersey. The telephone number at this address was Vineland 1357. On February 18, 1940, a telephone call was made to Vineland 1357 by Bematre and Marcanthony. Calls to Vineland 1357 were made from the telephone at 1062 Revere Avenue, Trenton, the other part of the duplex house in which the still was found. The defendant Maggio claims it was error to admit in evidence what Bematre and Marcanthony said when they called the Vineland number because there is nothing to show that he, Maggio, was on the receiving end of the conversation and that the evidence about the calls from and to 1062 Revere Avenue was objectionable because it was all based on hearsay. The proof, however, that Maggio lived at the Vineland address and was acquainted with Bematre and Marcanthony was some evidence from which a jury could infer that the call was made to him. Since no exceptions were taken to the admission of testimony as to the calls made

States, 10 Cir., 1933, 67 F.2d 943; United States v. Graham, 2 Cir., 1939, 102 F.2d 436 certiorari denied 307 U.S. 643,

59 S.Ct. 1041, 83 L.Ed. 1524; Walker v. United States, 4 Cir., 1939, 104 F.2d 465.

from the Revere Avenue house we do not feel called upon to pass upon this question.

■ V. The defendants moved for a mistrial and have assigned the refusal thereof as error. In response to somewhat ambiguous questions by government counsel Bematre testified that he had been attacked and robbed by DiNola and another. This alleged robbery had no bearing upon the charges in the indictment. The defendants maintain the evidence was deliberately elicited by the United States attorney in order to inflame the jury. We find from the record that the answers were non-responsive and unsolicited by the United States attorney. The trial court directed the jury to disregard the evidence. Despite this warning counsel for defendants cross-examined as to the robbery and thereby opened the door to reexamination on this point by government counsel.

■ The second ground for a mistrial is that Anthony Lamantia, called as a witness by the government and recalled by the defendants, was arrested in the presence of the jury upon a charge of perjury. As the witness left the stand the United States attorney asked leave to make an application for his arrest, which leave was not granted. The defendants alleged that the witness was arrested by Robert C. Glassman, an investigator of the Alcohol Tax Unit. The defendants offered to prove this by Glassman but the trial judge sustained an objection to this line of questioning. The defendants contend that the trial judge in so ruling committed reversible error. Assuming that the witness was arrested and that the arrest took place in the presence of the jury we do not find that the defendants were thereby deprived of a fair trial. The decisions cited by the defendants to the contrary are based on the theory that by such action witnesses may be intimidated and the jury unduly influenced. In the present case the witness Lamantia had already given his testimony and if it was perjured a proper regard for the administra-

tion of justice required his prompt arrest for that offense. The question as to whether witnesses were intimidated is one of fact. Di Carlo v. United States, 2 Cir., 1925, 6 F.2d 364, certiorari denied 268 U.S. 706, 45 S.Ct. 640, 69 L.Ed. 1168. The record in the present case does not indicate that any of the remaining witnesses was in fact intimidated by the action taken with respect to Lamantia. It is argued that the arrest of a witness in the courtroom with the approval of the trial judge will indicate to the jury the judge's opinion as to the veracity of the witness and thus influence their decision as to the witness's credibility. This argument, however, can have no validity in the federal courts in which the trial judge is privileged to comment directly upon the evidence.[5] Finally it may be noted that in New Jersey it has been expressly held that a trial is not vitiated by reason of the arrest of a witness in the presence of the jury.[6] There are similar rulings in the Federal Courts.[7]

The judgments are affirmed.

---

[5] Rucker v. Wheeler, 127 U.S. 85, 93, 8 S.Ct. 1142, 32 L.Ed. 102; United States v. Frankel, 2 Cir., 1933, 65 F.2d 285, 288.

[6] "The arrest of one of the state's witnesses in view of the jury, after he had left the stand, is no ground for reversing the judgment under review. So far as the case discloses, his arrest may have been for some offense entirely disconnected with the trial of the case. But, even if the evidence showed that it was

for perjury committed on the witness stand, that would not vitiate the trial." State v. Harrington, 1915, 87 N.J.L. 713, 716, 94 A. 623, 625, affirmed 87 N.J.L. 716, 94 A. 625.

[7] Wallace v. United States, 7 Cir., 1917, 243 F. 300; Beavers v. United States, 6 Cir., 1925, 3 F.2d 860, certiorari denied 245 U.S. 650, 38 S.Ct. 11, 62 L.Ed. 531; Reynolds v. United States, 10 Cir., 1931, 48 F.2d 762.