THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v.
MICHAEL LANG AND EUGENE MURPHY, PLAINTIFFS
IN ERROR.

Argued February 16, 1931—Decided May 18, 1931.

For the plaintiffs, *Mark A. Sullivan.*

For the state, *John Drewen,* prosecutor of the pleas (*Harlan Besson,* assistant prosecutor, on the brief).

The opinion of the court was delivered by

PARKER, J.  The plaintiffs in error were convicted of murder in the first degree, the deceased being a man named

Cronin. The theory of the state was that Cronin had been attacked by them and severely wounded in New York City, and when in an unconscious condition had been bundled into the rumble seat of an automobile, the back shut down over him, the car driven through the Holland Tunnel and Jersey City to a point near Secaucus where the unconscious man was dumped into the swamp, and being still alive was shot in the head, the defendants taking to the car again and a few minutes later being arrested for a collision, and an inspection of the car resulting in discovery of a quantity of blood and other incriminating circumstantial evidence. This theory was amply supported by direct, circumstantial and medical expert evidence, though it was argued at the trial and is now argued here that at best the evidence fails to show but that Cronin was dead before the automobile left New York, or that the fatal blows were struck there and that death occurred in this state as a result of them and not of a bullet wound inflicted in this state. All this was naturally for the jury, who heard evidence in great detail on every phase of the case. Inasmuch as it is not argued that the verdict was against the weight of evidence, we deem it unnecessary to go more fully into the facts.

The first point made is that "the plaintiffs in error were entitled to a bill of particulars, and suffered manifest injury by reason of its denial."

There was a petition in writing to the court, and a rule to show cause thereon. The particulars asked were:

"a. The place where the State of New Jersey alleges and intends to prove that the said Cronin mentioned in the indictment was stricken, whether within or without the state.

"b. Where the said Cronin, being the man alleged to have been slain by your petitioners and mentioned in the indictment against them died, whether within or without the State of New Jersey."

The petition was filed in view of section 60, of the Criminal Procedure act (*Comp. Stat., p.* 1839), which reads as follows:

"Where any person shall be feloniously stricken or poisoned upon the sea, or at any place out of the jurisdiction of this

state, and shall die of the same stroke or poisoning within the jurisdiction of this state, or where any person shall be feloniously stricken or poisoned within the jurisdiction of this state, and shall die of such stroke or poisoning upon the sea, or at any place out of the jurisdiction of this state, in either of the said cases an indictment found in the county within the jurisdiction of this state in which such death, stroke or poisoning shall happen, shall be as good and effectual in the law, as well against the principal or principals in any such murder as against the accessory or accessories thereto, as if such felonious stroke or death thereby ensuing, or poisoning and death thereby ensuing, and the offense of such accessory or accessories had happened in the same county where such indictment shall be found;" &c.

The first branch of the argument under this point is that the particulars, if furnished, might have disclosed that the state relied on a felonious striking in New York and consequent death in New Jersey, and in that event counsel could have tested the validity of the indictment and the statute on which it was founded, before trial. But this is clearly a *non sequitur*. A demurrer to the indictment or a motion to quash for legal insufficiency is addressed to the indictment, and not to the bill of particulars, the latter being no part of the record and not vitiating the indictment even if the particulars exhibit no crime at all or one not within the scope of the indictment. *State* v. *Lehigh Valley Railroad Co.*, 94 *N. J. L.* 171.

The second branch of the point is that defendants were obliged to defend themselves in the alternative against a possible charge of felonious striking in New York and death in New Jersey on the one hand, and a charge of both striking and death in New Jersey, on the other, and (while the brief does not specifically say so) defendants were entitled to have the prosecutor confined to the one theory or the other. But we do not think they were so entitled. The indictment was sufficient to cover either theory of the case, the general conditions to be proved on either theory were substantially the same, the defense as presented was what the brief of the

prosecutor calls "a weak sort of alibi" consisting of admissions that they had the car, a borrowed one, that they came to New Jersey in it but that they did not attack Cronin at any time, did not transport him in the car, knew nothing about the blood or the bloody coat and waistcoat that matched the trousers on Cronin's body, and so on. Such a defense was perfectly relevant to either phase of the case: the circumstances of the automobile ride, where and how it began, continued and ended, were fully within the personal knowledge of the defendants themselves. Hence no injury was done them by the refusal to award particulars which would have restricted the state to a needlessly narrow line of proof and might well have resulted in a miscarriage of justice if by the chances and uncertainties of the evidence a case of murder was fully shown, but one that was outside of the narrow limits so imposed. The award of particulars is a matter of discretion and a denial will not be ground of reversal unless it appears that defendant suffered manifest wrong or injury thereby. *State* v. *Hatfield*, 66 *N. J. L.* 443. No such situation now appears.

Point 2 relates to the refusal of the court to strike out the answer to a question put by the prosecutor. The motion to strike out was made after a somewhat long answer had been completed, and was put upon the ground that it was not responsive. The case of *State* v. *D'Adame*, 84 *N. J. L.* 386, lays down the rule that such ground of objection is available only to examining counsel.

Point 3 relates to the "neutralization" of the testimony of the witness Doyle, with respect to whom the prosecutor alleged surprise. *State* v. *D'Adame, supra.* We see no error in the action of the court in permitting the prosecutor to cross-examine him with regard to a statement previously made by him indicating knowledge of certain facts which on the stand he said he did not know.

Point 4 relates to testimony of Daniel Cronin, a brother of the deceased, as to what deceased said to him in New York on the night of the killing when neither defendant was present, and

Point 5, the same with respect to testimony of one Doyle on the same subject. In both instances the testimony was that deceased said, in effect, that he was going to take a ride with Lang or Murphy, or both. This comes clearly within the decision in *State* v. *Hunter,* 40 *N. J. L.* 495, and the testimony was therefore competent.

Point 6 is that there was no proof of a felonious striking within New Jersey at any stage of the case. We think there was, and that the testimony of Dr. Peterson was quite sufficient to take the case to the jury in this regard. Dr. Peterson testified that he had examined the body where it lay, and made careful observation of the conditions there: that the body where covered with outer clothing was still warm, there was no *rigor mortis,* that there was a bullet wound in the head and a large clot of blood on it, and that immediately under the head the ground and foliage were soaked with blood, which must have amounted to several pints; that there was no blood on the neck, shoulders or chest. His conclusion was that all this bleeding had occurred while the man was lying there, and while blood was still circulating: that the man must have died on the spot where he was found. As to whether the wound had been inflicted there or before the man arrived there, he expressed no opinion. But we think it inferable from the circumstances testified to, particularly those repeated above that the wound in the head must reasonably have been inflicted when the man was on the ground or at most within a very few moments before he was placed there.

It was unnecessary, however, for the jury to go to this length for a conviction, for if they found that the man died there in Hudson county of a fatal blow inflicted elsewhere, that was sufficient. Section 59 of the Criminal Procedure act, deals with a striking in one county of this state, and death ensuing in another. Section 60, partially quoted above, deals with a striking outside the state and death within it, "or *vice versa,*" as Blackstone says. 4 *Blk.* 303. In this state the statute dates back to 1797 (*Pat.* 248), and was taken from 2 *Geo. II. C.* 21. Counsel challenges it both as a matter of construction and of constitutionality; but we

regard neither challenge as effective. The case of *State* v. *Carter*, 27 *N. J. L.* 499, construing it as not applying to acts "done *wholly* within the territorial limits of another regular government" was definitely overruled in *Hunter* v. *State, supra,* and we need only cite the remarks on this point of Chief Justice Beasley at pages 546 *et seq.* The cases of *State* v. *Wyckoff,* 31 *Id.* 65, and *State* v. *Le Blanch, Ibid.* 82, cited by counsel, relate to crimes not within the statute in question, and are therefore irrelevant. It is suggested that a defendant is deprived of the right of compulsory process for witnesses: but in any case the process reaches only witnesses within the jurisdiction and in any event he is better off than the state which not only cannot import unwilling witnesses but cannot even take their testimony out of the state, while defendant under our statute can at least do the latter. *Comp. Stat., p.* 2231, § 36. Finally, it is argued under this point that section 60 is in conflict with the federal constitution, Article III, section 2, paragraph 3, which provides that "the trial of all crimes * * * shall be held in the state where the said crimes shall have been committed." But a glance at the article itself shows that it relates to the judicial power of the United States, and has no bearing on trials under the state law.

Points 7 to 10 inclusive relate to passages in the charge claimed to be erroneous. We have examined them with care, separately, and in connection with the body of the charge, and without going into detail, are of opinion that the criticisms are fanciful and unsubstantial.

Point 11 alleges error in refusing the following request:

"The defendants under our law are not obliged to exculpate themselves, that is, they are not called upon for an explanation in any situation brought out by the state wherein the criminality is imputed against them or either of them, but the burden of proof always rests upon the state."

This, we think, is not the law. It is true, of course, that the general burden of proof always rests upon the state, and the court so charged; but it is not true that the defendants would not be, or were not, called upon for an explanation

"in any situation brought out by the state wherein the criminality is imputed against them or either of them." Such a proposition runs directly counter, for example, to the rules that the burden of proving insanity is on the defendant; that circumstances alleged by way of justification, excuse or alleviation, must be proved by the prisoner unless they arise out of the evidence produced against him. See *Brown* v. *State*, 62 *N. J. L.* 666 (at *p.* 704), and citations. It runs counter also to our rule, which counsel for defendants must have had in mind when he put his clients on the stand, that when the evidence tends to establish facts which if true would be conclusive of the guilt of the defendant, and he can disprove them by his own oath as a witness if they be not true, then his silence would justify a strong inference that he could not deny the charge. *Parker* v. *State*, 61 *N. J. L.* 308 (at *pp.* 313, 314); *State* v. *Kisik*, 99 *Id.* 385.

Point 12 is that the jury were allowed to consider guilt of murder in the first degree when the proofs would not warrant such a verdict. If the testimony for the state was believed, and there was apparently no good reason to discredit it, the verdict was amply justified.

Point 13 is that the proofs could not satisfy a considerate mind beyond a reasonable doubt that defendants were guilty of murder in the first degree. We are not called on to decide that question, which was exclusively for the jury, and which they decided on proper evidence.

The judgment is affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.

*For reversal*—None.