THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. NICHOLAS GUIDA, PLAINTIFF IN ERROR.

Argued October 6, 1936—Decided June 2, 1937.

Before BROGAN, CHIEF JUSTICE, and Justices CASE and PERSKIE.

For the plaintiff in error, *Anthony A. Callandra* and *George S. Silzer.*

For the state, *William A. Wachenfeld* and *Joseph E. Conlin.*

The opinion of the court was delivered by

PERSKIE, J.   Plaintiff in error was tried and convicted in the Essex County Court of Quarter Sessions upon an indictment which charged him and Joseph Silano with having violated what is known as the "Small Loan act." *Pamph. L.* 1932, *ch.* 62, *p.* 94.   The charge was that on June 15th, 1934, and on other days thereafter up and until the day the indictment was presented, &c. (November 27th, 1935), the defend-

ants, Joseph Silano and Nicholas Guida, at Newark, New Jersey, "did unlawfully engage in the business of making loans of money * * * in the amount of * * * three hundred dollars and less and did charge, contract for, and receive a greater rate of interest, * * * therefor than six per centum annually, without having first obtained a license from the Commissioner of Banking and Insurance of the State of New Jersey, contrary to the form of the statute in such case made and provided * * *."

After the jury was sworn and prior to the opening address by the prosecutor of the Pleas, Silano retracted his former plea of not guilty and entered a plea of *nolo contendere* which plea was accepted. The trial continued as against Guida. He was found guilty and the sentence of the court was that he be committed to the state prison at hard labor, for a minimum term of two and one-half years and for a maximum term of three years. It is the judgment based upon that conviction and sentence that is here challenged. The entire record is certified and is before us upon exceptions and reasons for reversal.

Sixty-three assignments of error and sixty-five reasons for reversal are set down for the plaintiff in error; twenty-one are argued. Few of those argued conform to the oft declared and well established applicable practice. They fail to point out with "sufficient precision" (*State* v. *Blaine,* 104 *N. J. L.* 325; 140 *Atl. Rep.* 566), or with "particularity" (*McKenna* v. *Reade,* 105 *N. J. L.* 408, 412; 144 *Atl. Rep.* 812), the judicial action alleged to be erroneous, complained of and sought to be reviewed. To refer to either an assignment of error or to a reason for reversal only by number, as is the fact here, without stating the contents thereof, is a practice which has been held to be "irregular and insufficient" (*State* v. *Blaine, supra,* at *p.* 329), and "pernicious" (*McKenna* v. *Reade, supra,* at *p.* 414).

At all events, we have carefully considered all the points argued and are of the opinion that none is well founded. But a few merit discussion.

*First:* Did the court err in refusing to direct an acquittal at the end of the state's case or at the end of the entire case? We think not.

It was open to the jury to find, if they so chose, that Silano and plaintiff in error by mutual arrangement undertook to and did engage in the business of making loans as charged; that Silano procured the borrowers and Guida advanced the moneys; that both pursued and attained, with full knowledge of all the facts, the same unlawful objective charged; that they acted in concert; that Guida was bound by the words and deeds of his co-conspirator and wrongdoer; that Silano by his plea of *nolo contendere* admitted his guilt; that the several loans made to Fitzsimmons, O'Sullivan and Robinson were made as charged in the indictment; that the rate of interest charged was more than six per centum annually. It will serve no useful purpose to detail the unconscionable and illegal rate of interest charged on these loans. We think that the proofs fully support and justify the jury's verdict finding defendant guilty beyond a reasonable doubt. And what has already been written likewise applies to the denial of the motion made in arrest of judgment in support of which were urged the same grounds that were advanced in support of the motions for an acquittal. To set aside a verdict as against the weight of the evidence, it must be made to appear that the verdict gives rise to the clear inference that it was the result of mistake, passion, prejudice or partiality. *State* v. *Treficanto,* 106 *N. J. L.* 344; 146 *Atl. Rep.* 313; *State* v. *Lederman,* 112 *N. J. L.* 366, 370; 170 *Atl. Rep.* 652.

*Second:* Did the prosecutor of the Pleas commit prejudicial error in his opening remarks to the jury? We think not. The prosecutor of the Pleas said, among other things, that "the facts which the state will disclose in this case is the existence, as far as these defendants are concerned, of a plain open and shut usury racket." The proofs disclosed fully support that statement. Suffice it, not by way of limitation but for the purpose of illustration, to observe Robinson's testimony. He testified that he borrowed $150 and was to pay $30 a week interest, and although he paid $270 in

nine weeks, yet, he still remained owing the principal debt of $150. As to the latitude allowed the prosecutor of the Pleas, in his address to the jury, and commenting upon evidence compare *State* v. *Lang,* 108 *N. J. L.* 98; 154 *Atl. Rep.* 864; *State* v. *Hauptmann,* 115 *N. J. L.* 412; 180 *Atl. Rep.* 809; *State* v. *Walters,* 14 *N. J. Mis. R.* 547; 186 *Atl. Rep.* 429; *affirmed,* 117 *N. J. L.* 547; 189 *Atl. Rep.* 621.

*Third:* It is argued that since no conspiracy or concert of action between Silano and Guida was charged in the indictment, no acts or words by Silano in connection with the several loans made as aforesaid involving and connecting Guida (those with which Guida was not so connected, were stricken), in his absence, were admissible. The indictment does not charge separate and distinct offenses by Silano and Guida. It charged a joint offense.

In *State* v. *Seidman,* 107 *N. J. L.* 204; 152 *Atl. Rep.* 861, Abraham Seidman, a justice of the peace, and Gustave S. Fischman, a constable, were jointly convicted upon an indictment which charged them with illegally taking by color of their respective offices, the sum of $10, as a fee, from one Frank Puciarello. In that case it was contended that the indictment charged the two defendants with separate and distinct offenses. And there, as here, a motion in arrest of judgment was made and denied. Chief Justice Gummere, writing the opinion for the court, said:

"* * * In our view, the court did not commit error in the refusal of these motions. The indictment does not charge separate and distinct offenses. The averment therein is that the two defendants were guilty of jointly taking a single sum of money from Puciarello, and not separate sums. The situation, so far as its legal aspect is concerned, is the same as that presented in a case in which two men, in the execution of a prearranged scheme, joined in 'holding up' and robbing a third person. The mere fact that the robbery is the result of a prearranged scheme, or conspiracy, does not constitute that offense, when participated in by two persons, two distinct and separable criminal acts.

"This conclusion also disposes of the second ground for

reversal: namely, that the trial court committed prejudicial error in permitting the prosecutor of the Pleas, in his opening address to the jury, to charge that the defendants had entered into a conspiracy to cause false criminal complaint to be made against Puciarello, and thereby extort money from him.

"Counsel for the plaintiff in error further contends as a ground for reversal that the trial court erred in admitting in evidence, over his objection, conversations and conduct of Fischman, not in the presence of plaintiff in error, and charging that such conversations and conduct were evidential against him. We find nothing of merit in this contention. As is stated in 16 *Corp. Jur.* 644, § 1283: 'The general rule is that where it appears that two or more persons have conspired to commit an offense, everything said, done, or written by one of them during the existence of the conspiracy and in the execution or furtherance of the common purpose, is admissible in evidence against the others.' "

Our Court of Errors and Appeals affirmed that judgment (108 *N. J. L.* 550; 156 *Atl. Rep.* 678). *Cf. State* v. *Neary,* 106 *N. J. L.* 104; 148 *Atl. Rep.* 608.

In 16 *Corp. Jur.* 647, § 1284, it is said: "The generally accepted view is that it is not necessary that the indictment or information should charge a conspiracy, but, where, although no conspiracy is charged, it is made to appear that there was concerted action between co-defendants, the acts and declarations of one are admissible against the other. * * * "

The trial judge, under the circumstances here exhibited, properly admitted Silano's conversations and deeds connecting Guida with the crime as charged, and correctly instructed the jury concerning the same.

*Fourth:* Did the court err by permitting the state (1) to neutralize the testimony of Silano, and (2) to contradict the testimony of Fitzsimmons? We think not.

Silano was offered as a witness by the state. He denied that he ever talked to Guida about his loans; or that Guida had anything to do with the making of the loans. Silano did, however, admit that he borrowed $200 from Guida for the

purpose of buying a car but instead used the money to make loans to others. The prosecutor of the Pleas claimed that he was surprised. He had reason to be surprised. For, Silano had made written statements (*S-1, S-2*) concerning the charge against him and Guida. In *Statement S-1* (erroneously marked *P-1*), he admitted that he took Fitzsimmons to Guida and the latter made loans to Fitzsimmons; that he got all his money from Guida for the several loans made by him; that Guida promised him "fifteen per cent." of the amount loaned to each borrower he procured for Guida; that he received about $8 a week as his share of commissions so earned. When these statements were offered counsel for Guida made the following statement:

"I have no objection to this. In reference to the statement which has been used and attempted to be proven by the prosecutor on his surprise for the purpose of neutralizing all of the testimony of Silano, I object to the introduction of the statement, upon the ground that it is not the statement of Silano, the state witness Silano."

The prosecutor of the Pleas emphasized the fact that these statements were not offered to prove the truth of the facts therein contained but to neutralize the testimony of Silano. Before the court permitted the prosecutor of the Pleas to read from the statement it explained and charged the jury as follows:

"Now, before you read the statement, Mr. Prosecutor, it might be proper for the court to explain to the jury just the effect of this statement.

"Realize, gentlemen, that the statements of fact contained in that statement are not evidential of anything. They are not evidential of anything. That statement is not made before the court under cross-examination. It is merely made under an entirely different circumstance and its effect as evidence is of no weight. The statement is introduced to neutralize previous testimony given here on the stand by the witness Silano. In so far as it contradicts anything he said on the stand it is effective to neutralize that, to wipe it off the slate, to wipe the slate clean of it, that is, according to what

the facts may be believed and found to be by the jury, by the statements in that paper. What I wish to emphasize to you is this, particularly: Of course, I wish you to regard all I have said, but particularly I do not wish you to be misled into the impression that statements contained in that paper have any evidential value to prove the truth of them.

"Now, I hope that is clear to you. I hope so, but please remember that, gentlemen, the statement is not like testimony. It is used only for one purpose, to wipe the slate clean of previous contradictory statements by Silano, if any, and for that purpose and for no other.

"All right, Mr. Prosecutor."

The admission of Silano's contradictory statements was discretionary with the court. In the exercise of that discretion the court followed the well settled practice set out in *State* v. *D'Adame,* 84 *N. J. L.* 386; 86 *Atl. Rep.* 414, and consistently followed in succeeding cases. See *State* v. *Sgro,* 108 *N. J. L.* 528; 158 *Atl. Rep.* 491; *State* v. *Lang,* 108 *N. J. L.* 98; 154 *Atl. Rep.* 864.

As to the testimony of Fitzsimmons. He was also offered as a state's witness. He had testified before the grand jury identifying and connecting Guida with the loans made to him. At the trial he said he never saw Guida or borrowed any moneys from him. The prosecutor of the Pleas claimed surprise. He surely was entitled to, and did then and there, cross-examine Fitzsimmons with regard to statements previously made by him indicating knowledge of the facts which on the stand he said he did not know. *State* v. *Lang, supra* (*at p.* 101). The prosecutor of the Pleas also had the right to neutralize or discredit his testimony by showing by other witnesses contradictory statements made by Fitzsimmons on other occasions. *State* v. *D'Adame, supra* (at *p.* 395, last paragraph). The latter course did not, however, become necessary. For this is what happened. The prosecutor of the Pleas asked (it was late in the afternoon of the day of the trial) and was given an adjournment until the following morning. Fitzsimmons returned to the stand (it is said he did so because of threatened imprisonment for false swearing

or contempt of court) and offered recanting proof identifying Guida and disclosing his dealings with him. He admitted that he willfully falsified, but that he did so because of fear of bodily harm and injury. But once he was explained the probable consequences of his falsification and assured the protection of the court, he concluded to recant his false testimony. It is argued that, under the maxim of *"falsus in uno falsus in omnibus,"* Fitzsimmons' testimony being willfully and intentionally false should have been entirely disregarded. That argument is without merit. The maxim *"falsus in uno falsus in omnibus,"* is not a mandatory rule of evidence, but rather a presumable inference that a jury may or may not draw when convinced that an attempt has been made to mislead them by a witness in some material respect. *Addis* v. *Rushmore, 74 N. J. L.* 649; *65 Atl. Rep.* 1036. The testimony, therefore, of a witness cannot be stricken out in its entirety, because in one respect such testimony may seem impossible of belief. *Bashaw* v. *Eichenberger, 100 N. J. L.* 153; *125 Atl. Rep.* 130. The court charged as follows:

"Now, in order that there may be no misunderstanding on anybody's part, either the juror's part or counsel's part, I will state now to the jury that the testimony of the witness, Fitzsimmons, is to be taken as a whole from beginning to end, and the jury are at liberty to believe such part of it as they see fit, reject such part of it as they see fit. They must apply their experience and common sense to the situation, and they are the ones who must decide under all the facts and circumstances of this case which part of Fitzsimmons' testimony is true and which part is not true."

It would indeed be a harsh rule of law if it were otherwise.

*Fifth:* Does the fact that *Exhibit S-2* (memorandum setting out the names and amounts of loans made) was obtained without a search warrant render it inadmissible? It is perhaps sufficient to say that no such objection was urged as to its admission. At all events, the exhibit procured without a search warrant was clearly admissible. It was a form of bookkeeping in actual use as a means of carrying on the unlawful business. *State* v. *MacQueen, 69 N. J. L.* 522;

55 *Atl. Rep.* 1006; *State* v. *Gould,* 99 *N. J. L.* 17; 122 *Atl. Rep.* 596; *State* v. *Lyons,* 99 *N. J. L.* 301; 122 *Atl. Rep.* 758.

*Sixth:* Is the act constitutional? That question was not raised below. It neither goes to the jurisdiction nor does it involve a question of public policy. It cannot, therefore, be raised and argued here, an intermediate court of appeal, for the first time. *Dickinson* v. *Plainfield,* 116 *N. J. L.* 336, and cases therein collated at page 338, 184 *Atl. Rep.* 595.

For reasons indicated, the judgment under review will be affirmed.