STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ROBERT FARLOW, ALSO REFERRED TO AS ROBERT F. FARLOW, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 10, 1980—Decided December 22, 1980.

Before Judges BISCHOFF, MILMED and FRANCIS.

*Stanford M. Singer,* Designated Counsel, argued the cause for appellant (*Stanley C. Van Ness,* Public Defender, attorney).

*Katherine A. Smith,* Deputy Attorney General, argued the cause for respondent (*John J. Degnan,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

MILMED, J. A. D.

Tried to a jury, defendant was found guilty of murder in the first degree, while armed, and possession of a revolver in violation of *N.J.S.A.* 2A:151–41(a). His motion for a judgment of acquittal, or, in the alternative, for a new trial, was denied. On the conviction for murder in the first degree he was sentenced to the State Prison for life. On the conviction for being armed at the time of the murder he was sentenced to the same institution for a consecutive term of nine to ten years. And, on the conviction for possession of a revolver without the requisite permit he was sentenced to the same institution for a concurrent term of six to seven years. This appeal followed.

Defendant's contentions on the appeal, as set forth in the brief submitted on his behalf, are the following:

POINT I   The trial court erred in denying defendant's motion to dismiss the indictment on jurisdictional grounds.

POINT II   The trial court erred in refusing to enter an acquittal as to first-degree murder at the close of the State's case.

POINT III   The trial court erred in failing to exclude defendant's prior conviction from the evidence (not raised below) and in refusing to permit explanation of the nature and circumstances of the prior offense.

POINT IV   The comments of the prosecutor on summation were both prejudicial and outside the evidence, and denied defendant a fair trial.

POINT V   The imposition of consecutive sentences was improper.

We have considered these contentions and the arguments advanced in support of them in our review of the record submitted on the appeal. We find the issues raised by defendant to be clearly without merit. *R.*2:11–3(e)(2). His motion for a judgment of acquittal, or, in the alternative, for a new trial, was properly denied. We add the following observations regarding defendant's pre-trial motion to dismiss the first two counts of the indictment, *viz.*, the counts charging him with: (1) murder, and (2) while armed.

The indictment ( # 1721–75) which was returned by a Camden County Grand Jury charged in the first count that:

On or about the 31st day of May, 1976 in the City of Gloucester in the County of Camden aforesaid, and within the jurisdiction of this Court, ROBERT F.

FARLOW did unlawfully, feloniously and with malice aforethought, kill and murder Anthony Mele contrary to the provisions of the form of the Statute in such case made and provided, and against the peace of this State, the Government and dignity of the same.

The second count, as amended, charged defendant with being armed with a revolver at the time (*N.J.S.A.* 2A:151–5).

In support of defendant's motion to dismiss these two counts, counsel argued that it would be demonstrated that: defendant shot and wounded the victim, Anthony Mele, in Philadelphia at about 9 p.m. on the night of May 31, 1976; he transported Mele "to the location in Gloucester City, where the body was found"; at about 10:30 p.m. on May 31, 1976, as he was driving his vehicle back towards Philadelphia, he was involved in an automobile accident on the New Jersey side of the Walt Whitman Bridge; "the police were called to the scene," defendant was arrested, and a weapon was found in his vehicle; the victim, Mele, "was taken to the hospital in New Jersey, where he was treated and he expired at the hospital sometime in the early morning hours of the following day, June 1, 1976"; and "[t]hat was in Camden County." This description of the events was stipulated to by the State "solely for the purpose of [the] motion" to dismiss the indictment.

The trial judge denied the motion primarily on the authority of *Rule* 3:14–1(d) and *State v. Lang,* 108 *N.J.L.* 98 (E. & A. 1931). We agree with that ruling. In *Lang,* Justice Parker, speaking for a unanimous Court of Errors and Appeals, observed, in essence, that under Section 60 of the Criminal Procedure act then in effect (*Comp.Stat., pp.* 1839–1840), if the victim died in this State of a fatal blow inflicted in New York the assailants could properly be indicted and tried for the murder here, in the county where the death occurred. He noted that

... if they [the jurors] found that the man died there in Hudson County of a fatal blow inflicted elsewhere, that was sufficient. Section 59 of the Criminal Procedure act, deals with a striking in one county of this state, and death ensuing in another. Section 60, partially quoted above, deals with a striking outside the state and death within it, "or *vice versa*," as Blackstone says. 4 *Blk.* 303. In this state the statute dates back to 1797 (*Pat.* 248), and was taken from 2 *Geo.II.C.* 21. Counsel challenges it both as a matter of construction and of constitutionality; but we regard neither challenge as effective. [at 102–103].

Section 60 of the former Criminal Procedure act was carried forward almost verbatim in the 1937 revision. See section 2:184–3 of the *Revised Statutes* of 1937. In 1951, the Legislature adopted and the Governor approved "a supplement to the Revised Statutes consisting of, and to be known as, Title 2A, Administration of Civil and Criminal Justice . . ." *L.* 1951, 1*st Sp.Sess., c.* 344, effective January 1, 1952. The new legislation repealed *Title* 2 of the *Revised Statutes* and omitted to reenact the venue provisions therein, including *R.S.* 2:184–3. In *State v. DiPaolo,* 34 *N.J.* 279 (1961), *cert. den.* 368 *U.S.* 880, 82 *S.Ct.* 130, 7 *L.Ed.2d* 80 (1961), Chief Justice Weintraub, speaking for a unanimous Supreme Court, commented upon this omission and the underlying reason for it. Thus, he stated

> . . . we are satisfied that the Constitution [*N.J.Const.* (1947)] does not embody the common law rule of venue. This leads to the final question whether this court may deal with venue under its constitutional authority to "make rules governing * * *, subject to law, the practice and procedure in all such courts." (*Art.* VI, § II, *par.* 3). As we have said, the subject of indictment and the incidental matter of venue plainly fall within the area of practice and procedure. We add that the Legislature entertained the same view when, in enacting *Title* 2A by *L.* 1951, 1*st Sp.Sess., c.* 344, it deliberately omitted to reenact the venue provisions of *Title* 2 as well as other provisions relating to indictment (*R.S.* 2:184–1 to 6; 2:188–1 to 26), to the end that the Supreme Court could deal with the subject under its rule-making power. *State v. Haines,* 18 *N.J.* 550, 558 (1955).[1] [at 287].

---

[1]In *State v. Haines, supra,* Chief Justice Vanderbilt, in his opinion for a majority of the Court pointed out that:

> In repealing *Titles* 2 and 3 and enacting *Titles* 2A and 3A the Legislature was stripping the statute book of procedural matters. As we said in *State v. Otis Elevator Co.,* 12 *N.J.* 1, 18 (1953):

> "Sensing the undesirability of the comingling of substantive and procedural law in *Title* 2 of the *Revised Statutes* dealing with the administration of civil and criminal justice and in *Title* 3 dealing with the administration of estates, the Legislature in June 1950 appointed an Advisory Committee on the Revision of Statutes (*L.* 1950, *c.* 171) to revise these two titles * * * and to delete the procedural matter therein, and on December 5, 1951 it enacted the recommendations of its Advisory Committee as *Titles* 2A and 3A of the *Revised Statutes* (*L.* 1951, *cc.* 344, 345)."

> [18 *N.J.* at 558].

The Supreme Court dealt with a pertinent portion of *R.S.* 2:184–3 when it adopted *R.* 3:14–1(d). That rule, which was in effect at the time of the indictment and trial in this case, provides:

> An offense shall be prosecuted in the county in which ·it was committed, except that
>
> \*      \*      \*      \*      \*      \*      \*      \*
>
> (d) Whenever a person dies within the jurisdiction of this State as a result of an offense committed outside the jurisdiction of this State, or dies outside the jurisdiction of this State as a result of an offense committed within the jurisdiction of this State, the prosecution shall be had in the county in which the death occurred or the offense was committed.

It is accordingly apparent that the pertinent provisions of Section 60 of the former Criminal Procedure act, relied on by the Court in *State v. Lang, supra,* have been revived with full force by the Supreme Court, pursuant to its constitutional rule-making authority, in *Rule* 3:14–1(d). The *Rule* has no less impact or vitality than its predecessor statute, *viz.,* Section 60 of the Criminal Procedure act (*Comp.Stat., pp.* 1839–1840) as revised in *R.S.* 2:184–3.[2] We accordingly find no relevance whatever in defendant's suggestion that "the statutory underpinnings of *State v. Lang* did not obtain as of May 31, 1976, nor had they since 1951."

Defendant's reliance on *State v. McDowney,* 49 *N.J.* 471 (1967) is misplaced.[3] There, the actual site of the victim's death

---

[2] We note here that consistent with *Rule* 3:14–1(d) the new Code of Criminal Justice provides in Section 2C:1–3, among other things, that:

> a. Except as· otherwise provided in this section, a person may be convicted under the law of this State of an offense committed by his own conduct or the conduct of another for which he is legally accountable if:
>
> (1) Either the conduct which is an element of the offense or the result which is such an element occurs within this State;
>
> \*   \*   \*   \*   \*   \*   \*   \*
>
> d. When the offense is homicide, either the death of the victim or the bodily impact causing death constitutes a "result," within the meaning of subsection a. (1) and if the body of a homicide victim is found within the State, it may be inferred that such result occurred within the State.

[3] Counsel for defendant refers to the statement in *McDowney, supra,* that

> It is fundamental that an essential element necessary to the invocation of jurisdiction in criminal cases is that the crime be committed in the state in which the case is tried. [49 *N.J.* at 474]

was not determined. However, since "[a]ffidavits introduced by the State placed both the body and the bloody car in New Jersey," (at 475) the dismissal of the indictment by the Law Division was held to be error, the Supreme Court noting that "[s]uch circumstantial evidence as the presence of the body within the State has been held sufficient to allow the drawing of an inference that the crime was committed at that place." *Id.* Here, the result of the shooting and wounding of the victim, *i. e.,* the ultimate death of Mele, an essential element of the crime of murder charged in the indictment, unquestionably occurred in this State. Thus, the indictment, which properly alleged that the killing occurred in Gloucester City in Camden County, was clearly sufficient on its face. *State v. McDowney, supra,* 49 *N.J.* at 474. Defendant's motion to dismiss Counts 1 and 2 of that indictment was properly denied.

The judgment of conviction and sentence under review are affirmed.

---

An integral part of the homicide with which defendant was charged occurred in Camden County and defendant was properly indicted and tried there.