**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1025-18T1

JOHN BARON,

     Plaintiff-Respondent,

v.

KARMIN PARALEGAL
SERVICES,

     Defendant-Appellant.

_____

Submitted October 29, 2019 – Decided November 21, 2019

Before Judges Yannotti, Currier and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. DC-010281-18.

Alan Karmin, appellant pro se.

John Baron, respondent pro se.

PER CURIAM

Defendant Karmin Paralegal Services (defendant) appeals from an order of the Law Division Special Civil Part dated September 11, 2018, which

awarded plaintiff John Baron $3000 in compensatory damages and $9000 in punitive damages, for a total judgment of $12,000, and dismissed defendant's counterclaim following a bench trial. Because plaintiff's complaint did not seek punitive damages, we affirm in part and reverse in part.

I.

In March 2017, plaintiff entered into a contract with defendant to provide paralegal services involving a child support dispute with his ex-wife. Defendant's owner, Alan Karmin (Karmin), advised plaintiff that his ex-wife's claim was "frivolous" because she could not assert jurisdiction over plaintiff in New Jersey as the divorce decree was entered in North Carolina. Plaintiff's ex-wife resided in North Carolina with the parties' minor child prior to moving to New Jersey. Moreover, Karmin told plaintiff "he ha[d] the expertise [of] an attorney, but he d[id not] charge attorney fees."

Defendant offered to prepare certain documents, including an answer to the ex-wife's motion, a cross-motion, discovery requests, a reply to any opposition, legal research, and correspondence. Plaintiff hired Karmin, and signed a contract on March 11, 2017, stating in part:

> 1. I [(Alan Karmin)] agree to serve as a paralegal in order to prepare and produce documents needed to file with the court for your matter.

2. I will serve at all times as an impartial facilitator of your document preparation. I am a member of the New Jersey State Bar Association and I am a mediator trained by the New Jersey Institute for Continuing Legal Education and on the list of court-appointed mediators for family and civil cases. My role in this matter is strictly limited to that of document preparation and under no circumstances will I, nor am I able to, represent you in a court of law at any time in this matter.

. . . .

7. You have the right to retain legal counsel to advise you as to your legal rights and responsibilities.

8. My fee for services rendered for the time spent on this process is $1500 to be paid prior to the beginning of the process. This fee is strictly based on the work contracted for and covers the documents listed in 5 (a) through (e) and four hours of phone conversations, email/text messages, research, etc. Should further issues arise that require work including, but not limited to, written correspondences, phone conversations, emails/text messages, research, and/or document preparation, time will be billed at an hourly rate of $75 per hour and will be billed in a minimum of [one-quarter] hour increments . . . .

9. The services provided are strictly limited to that of document preparation. The decisions by the court in your matter are in no way guaranteed, nor should it be implied that any decisions by the court are guaranteed as a result of any documents presented.

A-1025-18T1

Plaintiff paid defendant an initial retainer of $750 upon signing the contract, and an additional $750 on May 2, 2017. In return, Karmin prepared opposition to the motion filed by plaintiff's ex-wife.

Karmin also prepared an appeal for plaintiff that was filed on July 11, 2017, which was unsuccessful. In total, plaintiff paid defendant $1500 for the appellate services.

Thereafter, plaintiff filed an application in the Family Part on December 27, 2017, prepared by Karmin, relative to child support. Karmin prepared an opening and closing statement for plaintiff to use, but he neglected to bring them to the hearing. In March 2018, a Family Part judge ruled against plaintiff and in favor of his ex-wife. After plaintiff informed Karmin of the adverse outcome, he responded that plaintiff "erred by not using his prepared opening and closing." Another appeal prepared by Karmin was unsuccessful.[1]

In May 2018, plaintiff consulted with several attorneys about his child support matter. One attorney advised him that Karmin performed "shoddy legal work" and violated ethical standards. Another attorney reported Karmin to "Trenton." Plaintiff demanded a full refund from Karmin via email on May 18, 2018. Karmin refused to provide a full refund, but offered a partial refund,

---

[1] Karmin claims plaintiff withdrew the second appeal.

4 A-1025-18T1

which plaintiff rejected. On May 23, 2018, plaintiff sent Karmin an email stating he expected a full reimbursement "by the end of the week" and if it was not forthcoming, plaintiff would "follow [through]."

Plaintiff also advised Karmin he was "on the radar," which Karmin interpreted as a threat. In response, Karmin stated he was "consulting" with his own attorney and stated: "Your repeated emails, making the demand over and over again, and the statements you are making, are threatening in nature and nothing short of harassment and a form of blackmail." An acrimonious exchange of emails between the parties followed.

Karmin reiterated his offer to reimburse plaintiff for the cost of the second appeal, which plaintiff again turned down. In reply, Karmin sent plaintiff an email advising their business was done, "and there [was] no reason for any further contact[,]" otherwise he would "file charges" for "blackmail, extortion, and harassment." Plaintiff emailed back:

> Not all. You took my money and gave me legal advice and sent out court documents! Once I got legal advice from you, I realized how I gave my money away to someone who has no right to practice law and writing documents representing me. You cost me a losing appeal and $937 out of my pocket.
>
> Sorry but I have to protect other innocent bystanders who buy into your B*******!

5

See you in court[.]

On June 7, 2018, Karmin filed a police report against plaintiff based upon "harassing emails." Thereafter, plaintiff filed a complaint with the Committee on the Unauthorized Practice of Law, which referred the matter to the Union County Prosecutor's Office. An investigation ensued and charges were filed against Karmin, who ultimately entered Pre-Trial Intervention, conditioned upon payment of restitution.

On June 18, 2018, plaintiff filed a complaint against defendant in the Special Civil Part alleging fraud. In his complaint, he stated:

> I am suing KARMIN PARALEGAL (Alan Karmin) for all monies [and] fees paid to him for misrepresentation. Mr. Karmin has been processing all my legal documents and motions in a child support case. I was contacted by [the] ethics committee who will be pursuing legal action and [the allegation is defendant] committed fraud. He has been acting as an attorney for me without a law degree!

Defendant filed a counterclaim asserting frivolous litigation, harassment, extortion, defamation of character, tortious interference, and intentional infliction of emotional distress.

On July 30, 2018, plaintiff emailed Karmin: "You actually filed a report on me for harassment and blackmail!! Really?? . . . You're the scam artist and I did warn you. See you in court and bring your checkbook. Na na na na[.]"

6

Sometime in August 2018, a "John B.," presumably plaintiff, provided a review of Karmin's services on Google. The review stated:

> [Karmin] pretends he has the expertise as an attorney, he does not!! He claims he is cheaper [than] an attorney, well you get what you pay for, bad results. After using [Karmin] for a legal matter which he convinced me he could help and save me money that went bad for me, I had to hire an attorney. I consulted a few attorneys on my case and they all laughed at me and said who prepared your shoddy legal work and documents[?] Fast forward, my attorney worked everything out for me. I wasted much time and money. My advice is to stay far away! Hire an attorney with a law degree who understands the law [better than] some paralegal who thinks he's an attorney!!! I'm being totally authentic on my experience. Sometimes you learn the hard way and hope this helps others to not buy into his nonsense.

During the bench trial, the trial judge heard opening and closing statements, questioned each party, and allowed cross-examination. Karmin testified: "I am very well aware of what [the] unauthorized practice of law is, and I'm very, very careful not to even walk that line."

The trial judge found plaintiff was "candid with the [c]ourt" and "[d]id not run away from those vituperative statements that he may have made" relative to his May 2018 emails. Further, the judge found plaintiff's testimony was "consistent with the evidence[] that was [adduced] at trial." In his findings, the judge determined the agreement signed by plaintiff and [Karmin] in March 2017

7

"serve[d] as a retainer agreement, a legal retainer agreement, to process litigation work on behalf of the plaintiff to the defendant." The judge also found:

> [W]hile there's some limiting language to try to distance himself from the practice of law [in the agreement], that, for all intents and purposes, this is a retainer agreement to do just that, practice law. And to prepare [c]ourt documents, which then would be surreptitiously then filed by the pro se, as his own. When, in fact, they were prepared under the advice of counsel, an individual who is not an attorney, Alan Karmin.
>
> That the defendant gave legal advice, and explained the legal proceedings to the plaintiff, . . . and that was clear.
>
> . . . .
>
> And, while Karmin Paralegal Serv[ic]es and [] Karmin [try] to pretend that they're not practicing law, it was clear that it -- by using the euphemism of [the] document preparation agreement, that, in fact, that's what he was doing. And, then, trying to hide behind the plaintiff, by making the plaintiff look like he's proceeding pro se.
>
> But, [Karmin's] out giving legal advice, preparing documents for filing in [c]ourt, preparing appeal documents, et cetera. As the old statement goes, actions speak louder [than] words.

The judge also concluded, based on the money orders plaintiff had submitted into evidence during the bench trial, that plaintiff compensated defendant $3000 for its services.

The judge further found plaintiff proved that defendant "committed fraud, [insofar] as he practiced law without a license, charged the plaintiff for those services, and kept the money." Based on that conclusion, the judge determined defendant owed plaintiff [$3000]. Additionally, the judge found that because defendant committed fraud, it would "triple the [$3000] award of compensatory damages for an award of [$9000], as punitive, on top of the [$3000] in compensatory, for a total award of $12,000."

In dismissing the counterclaim, the judge stated:

> the [c]ourt hear[d] that the plaintiff filed complaints concerning -- and posting complaints concerning Mr. Karmin's services. And, as such, he certainly had a right to do that. There can be no cause of action for that, he had a, certainly, a -- a perfect right to do that. And to, also, request his refund of the fees that were paid to him. And, as such, the [c]ourt finds no merit to the counterclaim.

This appeal followed.

On appeal, defendant argues: (1) the judge ignored the principle of false in one, false in all; (2) plaintiff failed to establish the elements of fraud; (3) the judge ignored pertinent evidence; (4) the judge showed bias and disrespect to him; (5) the judge abused his discretion; (6) plaintiff engaged in frivolous litigation; and (7) plaintiff is guilty of harassment, extortion, defamation of character, tortious interference, and intentional infliction of emotional distress.

A-1025-18T1

## II.

Our review of the trial court's determinations following a non-jury trial is a limited one. Petrozzi v. City of Ocean City, 433 N.J. Super. 290, 316 (App. Div. 2013) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). We must "give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015) (citing Rova Farms Resort, Inc., 65 N.J. at 483-84). Reviewing courts "should 'not disturb the factual findings and legal conclusions of the trial judge' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Rova Farms Resort, Inc., 65 N.J. at 484). We also defer to the trial judge's evaluation of witness credibility. Cesare v. Cesare, 154 N.J. 394, 412 (1998). Thus, review on appeal "does not consist of weighing evidence anew and making independent factual findings; rather, [an appellate court's] function is to determine whether there is adequate evidence to support the judgment rendered at trial." Cannuscio v. Claridge Hotel and Casino, 319 N.J. Super. 342, 347 (App. Div. 1999) (citing State v. Johnson, 42 N.J. 146, 158-59 (1964)).

However, we owe no deference to the trial court's "interpretation of the law and the legal consequences that flow from established facts . . . ." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). We review such decisions de novo. 30 River Court E. Urban Renewal Co. v. Capograsso, 383 N.J. Super. 470, 476 (App. Div. 2006) (citing Rova Farms Resort, Inc., 65 N.J. at 483–84; Manalapan Realty, 140 N.J. at 378).

A. False in One, False in All

Karmin argues plaintiff "lied multiple times" during the trial and the judge erred in finding plaintiff credible. Specifically, Karmin claims plaintiff was incredulous by testifying: (1) defendant's website appeared in a Google search for the word, "attorney"; (2) Karmin advised plaintiff he had to file an appeal relative to his child support matter; (3) that plaintiff's appeal was "unsuccessful"' (4) Karmin demanded payment for his services; (5) plaintiff was unhappy with Karmin's services; (6) plaintiff received a phone call from the Ethics Committee in Trenton; and (7) Karmin acted on his own. We disagree.

The "falsus in uno, falsus in omnibus" or "false in one, false in all" doctrine may be invoked by a trial judge when a witness has testified falsely to a material fact. State v. Fleckenstein, 60 N.J. Super. 399, 408 (App. Div. 1960). The maxim is not a mandatory rule of evidence, but rather a permissible

11

inference. Ibid. (citing State v. Guida, 118 N.J.L. 289, 297 (Sup. Ct. 1937)). Its application is a matter of the trial judge's discretion and goes to the weight to be given to the testimony in question. Hargrave v. Stockloss, 127 N.J.L. 262, 266 (E. & A. 1941).

We have carefully considered the record, the briefs, and the contentions advanced by both parties, in light of applicable law. Here, the findings of the trial judge are supported by adequate, substantial, and credible evidence, and there was no abuse of discretion. The false in one, false in all doctrine is not applicable and there was no error in the judge's determination that plaintiff was credible.

B. Fraud

Karmin argues he did not commit fraud because the parties' agreement clearly stated "that the services were strictly document preparation and would be provided to the [p]laintiff as requested and directed." And, Karmin never represented he was an attorney. We are unpersuaded by Karmin's arguments.

To prove common law fraud, five elements must be satisfied: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting

12

damages." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997). "Misrepresentation and reliance are the hallmarks of any fraud claim, and a fraud cause of action fails without them." Banco Popular N. Am. v. Gandi, 184 N.J. 161, 174 (2005).

Here, the trial judge concluded defendant committed fraud by engaging in the unauthorized practice of law, charging plaintiff for its services, and retaining plaintiff's payments.

Our Court has recognized that the "practice of law does not lend itself 'to [a] precise and all-inclusive definition.'" N.J. State Bar Ass'n v. N.J. Mortg. Assoc., 32 N.J. 430, 437 (1960) (quoting Auerbacher v. Wood, 142 N.J. Eq., 484, 485 (E. & A. 1948)). The practice of law is not "limited to the conduct of cases in court but is engaged whenever and wherever legal knowledge, training, skill and ability are required." Stack v. P.G. Garage, Inc., 7 N.J. 118, 121 (1951). Defining the practice of law generally requires a case-by-case analysis because of the broad scope of the field of law. In re Op. No. 24 of Comm. on the Unauth. Practice of Law, 128 N.J. 114, 122 (1992).

Here, Karmin admittedly prepared legal documents for plaintiff. Our jurisprudence is clear that the drafting of pleadings and other legal documents constitutes the practice of law. See Cape May Cty. Bar Ass'n v. Ludlam, 45 N.J.

121, 124 (1965) (stating the practice of law included the "filling in and completion of legal forms."). Karmin also provided plaintiff with legal advice about his child support dispute. The unauthorized practice of law also encompasses offering legal advice. See In re Estate of Margow, 77 N.J. 316, 328 (1978) (finding unauthorized practice of law when offering legal advice to testatrix and actively participating in the drafting of a will).

Here, Karmin engaged in the practice of law without the benefit of a supervising attorney. See RPC 5.3. He misrepresented his ability to practice law by representing to plaintiff he had "the expertise of an attorney." The judge aptly found Karmin intended for plaintiff to rely on his advice, to his detriment, and sustained damages. Based on the credible testimony of plaintiff and the evidence, the judge properly concluded defendant committed fraud.

C. Bias

Karmin contends that the trial judge's bias against him is evidenced by his ignoring "all of the lies told" by plaintiff. This argument is devoid of merit, but we make this observation.

The Code of Judicial Conduct, Canon 2, Rule 2.1 provides that "[a] judge shall act at all times in a manner that promotes public confidence in the independence, integrity and impartiality of the judiciary, and shall avoid

14

impropriety and the appearance of impropriety."  In the present case, the trial judge heard the parties' testimony and considered the evidence.  The court's remarks during the trial appeared to be "patient, dignified, and courteous" to the litigants.  See Code of Judicial Conduct, Canon Rule 3, 3.5.  Neither the judge's finding with respect to plaintiff's credibility nor his ruling establish a bias against Karmin or an appearance of bias.

D.  Abuse of Discretion – Punitive Damages

Defendant next argues that the trial judge abused his discretion in awarding punitive damages because the award was "excessive," "outrageous," and "had no basis [in] law."  Because plaintiff did not specifically pray for punitive damages in his complaint, we vacate and reverse the award of punitive damages.

The Punitive Damages Act, N.J.S.A. 2A:15-5.9 to -17, provides guidelines for determining whether punitive damages may be awarded.  The statute provides:

> a. Punitive damages may be awarded to the plaintiff only if the plaintiff proves, by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions.  This burden of proof may not be satisfied

15

by proof of any degree of negligence including gross negligence.

b. In determining whether punitive damages are to be awarded, the trier of fact shall consider all relevant evidence, including but not limited to, the following:

(1) The likelihood, at the relevant time, that serious harm would arise from the defendant's conduct;

(2) The defendant's awareness of reckless disregard of the likelihood that the serious harm at issue would arise from the defendant's conduct;

(3) The conduct of the defendant upon learning that its initial conduct would likely cause harm; and

(4) The duration of the conduct or any concealment of it by the defendant.

[N.J.S.A. 2A:15-5.12.]

N.J.S.A. 2A:15-5.12(c) provides guidelines by which the trier of fact is to determine the amount of punitive damages to be awarded.

The Act is designed to punish a wrongdoer and deter future such misconduct. See N.J.S.A. 2A:15-5.10. Thus, under the Act, punitive damages may be awarded if the plaintiff proves that the defendant caused harm and the harm suffered resulted from defendant's actual malice or wanton and willful disregard of plaintiff's rights. N.J.S.A. 2A:15-5.12(a).

"An award of punitive damages must be specifically prayed for in the complaint." N.J.S.A. 2A:15-5.11; see also In re Estate of Stockdale, 196 N.J. 275 (2008). Since plaintiff did not seek punitive damages in his complaint, the trial judge was not authorized to award punitive damages in this matter. We therefore reverse and vacate the $9000 punitive damage award, leaving plaintiff with a judgment for compensatory damages in the amount of $3000.

E. Frivolous Litigation

Defendant next contends plaintiff engaged in frivolous litigation because he was "well aware that [d]efendant is not an attorney" from the agreement executed in March 2017. We disagree.

Under N.J.S.A. 2A:15-59.1(b)(1) and (2), a complaint is frivolous where:

> (1) The complaint . . . was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury; or

> (2) The nonprevailing party knew, or should have known, that the complaint . . . was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

In the first email plaintiff sent to Karmin in May 2018, he clearly indicated he sought reimbursement so he could retain counsel to litigate his family matter. Plaintiff's intent was to simply get his money back, and he "[did not] want to

17

cause problems." When Karmin refused to fully refund the monies, plaintiff filed his complaint. The cause of action was not frivolous and defendant has not demonstrated the complaint was filed to harass or maliciously injure defendant.

We conclude that the remaining arguments—to the extent we have not addressed them—lack sufficient merit to warrant any further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Thus, we affirm the trial court's decision in awarding $3000 in compensatory damages to plaintiff, and we vacate and reverse the $9000 punitive damages award.

Affirmed in part, reversed in part.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

18

A-1025-18T1